[Nos. 1235 and 1236. Decided August 6, 1894.]

TOWN OF ELMA, *Appellant*, v. JOHN J. CARNEY *et al.*, *Respondents*.

TOWN OF ELMA, *Appellant*, v. WALTER H. WOOD, *Respondent*.

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — ACCEPTANCE OF WORK — ORDINANCES — ASSESSMENTS.

The conclusion of a town council, that the work done under a contract let by it for the grading of a street has been properly performed, cannot, in the absence of bad faith or palpable mistake, be set aside by the courts.

The fact that an ordinance of a town of the fourth class ordering the improvement of a street within certain limits, recites that the

ordinance is enacted in conformity with a previous resolution of expediency passed by its town council, when in reality such resolution did not cover the improvement proposed, will not operate to invalidate the ordinance, as, under Gen. Stat., § 678, the council has power and authority to order the work done, and no law requires the passage of a resolution of intention to grade streets in municipal corporations of that class.

Under Gen. Stat., § 678, providing that assessments for street improvements in towns shall be made upon the lands fronting on the street improved, "in proportion to the benefits upon the property to be benefited, sufficient to cover the total expense of the work to the center of the street on which it fronts," an assessment made upon the basis of the number of lineal feet of property fronting on the proposed improvement is invalid, and will create no lien in favor of the town for the cost of the improvement.

*Appeal from Superior Court, Chehalis County.*

*Austin E. Griffiths,* for appellant.

*George D. Schofield (T. D. Schofield, of counsel),* and *R. R. George,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—These actions were instituted by the town of Elma, a municipal corporation of the fourth class, for the purpose of foreclosing alleged liens upon real estate of the respondents, for grading portions of Third and Fourth streets in that town. The questions involved in both cases are practically the same, and they were tried together in the court below and were so argued and submitted in this court, though separate briefs were here filed.

The complaints set forth in detail, among other things, that certain resolutions and ordinances were duly passed by the town council, authorizing and ordering the grading of Third street and Fourth street, in said town, at specified localities; that publication of notice calling for bids was duly made and a contract let for the same to the lowest bidder; that said streets were duly graded under and in accordance with said contract; that the work was accepted

by the council; that under and by virtue of an ordinance (No. 34) of said town an assessment was duly made, levied and equalized upon each of the lots of the respondents equal to the amount of the benefit derived by each of said lots, respectively, from said improvement, and sufficient to pay the cost of said grading in front of said lots to the center of the street, and that said assessments became due and were delinquent on June 1, 1891. The answers admitted the due incorporation of plaintiff and that the premises described in the complaints were situated as therein alleged, but denied generally the remaining allegations of the complaint. In the Carney case the defendants also denied ownership of certain of the premises described in the complaint. It was affirmatively alleged, in both answers, in substance, that the plaintiff caused said streets to be graded without letting any contract therefor and without due authority of law, and thereafter, and prior to the commencement of this suit, accepted the same as fully completed, but that said work was wholly incomplete and was not done in accordance with any contract, plan or specification, and that neither of said streets was graded so as to conform to the established grades on said streets. In the replies certain facts were pleaded as matters in estoppel.

At the trial the plaintiff introduced in evidence an assessment roll and rested. The defendants moved for a nonsuit, which was denied, and they then introduced the entire record of the proceedings of the council of Elma concerning the alleged improvements, and also oral testimony, over the objection of plaintiff, in support of the allegations of the answer above set forth.

After the testimony was all in, the court, without making any findings of fact or conclusions of law, dismissed the complaints in both actions, for the reason, as stated by the learned trial judge in his written opinion, which is inserted in the record, that the work had not been done in accord-

ance with the plans and specifications adopted for the grades, and that the defect in the improvement resulted directly to the injury of the defendants. Counsel for the appellant insists that this ruling of the court was erroneous and that the judgment, upon the grounds stated in the court's opinion, is not supported either by the law or the facts disclosed by the record, and we feel constrained to agree with him. The record of the proceedings of the town council shows that the contract for the grading of these streets was let to the lowest bidder, and that the work was accepted by the council as satisfactory and in accordance with the agreement. That action of the council was, in the absence of bad faith or palpable mistake, conclusive upon the defendants. Elliott, Roads and Streets, p. 416; Cooley, Taxation (2d ed.), 671.

It was the province and duty of the council to determine whether the work was properly performed, and their conclusion, under the circumstances, cannot be set aside by this court. And, besides, we think the proofs show that the contractors did perform the work substantially in accordance with the terms of the contract. There was nothing in their agreement requiring them to do more than grade the streets according to the profiles and specifications prepared by the town engineer. Nothing was said in the specifications as to sidewalk benches, but it was therein specified that the grading should be done in accordance with the directions and to the entire satisfaction of the council. The specifications, among other things, required the foot of dumps in fills to be kept, as a rule, inside the street line, but the work was to be done according to the directions of the council. The dump evidently could not be kept within street lines where it was necessary to fill in from three to six feet of earth in order to make "sidewalk benches," without, at the same time, making retaining walls, or bulwarks, to support the earth. Neither the con-

tractors nor the council undertook to do anything of that
kind.    The contract, as we have said, was for grading the
streets and nothing else, and in such cases the word "street"
is generally understood to mean the traveled way between
sidewalks, and such was the understanding of the council
and the contractors in these instances.    See Elliott, Roads
and Streets, p. 17.

The council never directed any sidewalk benches to be
made in fills, under the contract, which we must presume
they would have done if they had deemed it a part of the
agreement.

It is contended by the learned counsel for the respond-
ents that even if the court committed error in dismissing
these actions, the judgments should nevertheless be af-
firmed.    The point is made in support of this contention
that the council never acquired jurisdiction of the work
that was done, and that the alleged assessment was void.
It appears that the council, some time prior to the com-
mencement of the improvements in controversy, passed
certain resolutions declaring it expedient to improve Third
street by grading the same from Railroad avenue to Eaton
street, and Fourth street by grading and sidewalking the
same from Anderson to Waldrip street.    Neither of these
resolutions included the property of the respondents now
in question.    On August 21, 1890, however, the council
passed a special ordinance wherein and whereby Third
street was ordered graded from Railroad avenue to Green-
wood avenue, and establishing all lots and parts of lots
and blocks abutting on said street between said points to
the full depth thereof as an assessment district and liable
for the cost of grading said street.    On the same day a
similar ordinance was passed, ordering Fourth street to be
graded from Anderson street to Greenwood avenue.    The
districts mentioned in these ordinances included the prem-
ises of the respondents, and the ordinances themselves re-

cite that the orders therein set forth were in accordance with the previous resolutions above mentioned, and which in fact did not include the property in controversy. But we do not think the ordinances ought to be deemed invalid on account of that recital. Neither the statute, which is the charter of the town, nor the general ordinance in relation to street improvements, requires any resolution of intention to grade streets to be passed. The statute (§ 678, Gen. Stat.) authorized and empowered the council to *order* the work to be done. This was done by the special ordinances which we have mentioned, and we are, therefore, of the opinion that the council had jurisdiction of the work notwithstanding the discrepancy between the resolutions of expediency and the subsequent ordinances.

The statute above referred to provides that, "whenever any expenses or costs of work shall have been assessed on any lands, the amount of said expenses shall become a lien upon said lands, which shall take precedence of all other liens, and which may be foreclosed in accordance with the provisions of the Code of Procedure." The vital question, therefore, in these cases is, was the land of the respondents assessed; that is, legally assessed?

It was said by this court in *Town of Elma v. Carney,* 4 Wash. 418 (30 Pac. 732), referring to this statute, that the production of an assessment roll or list would *prima facie* entitle the town to a decree, unless the defense should establish such a failure of conditions precedent to a lawful assessment as would, in equity, require the court to find that there had been no assessment at all. But it was not meant by what was there said to announce, as a legal proposition, that anything which the council might accept as an assessment would in fact be deemed such in equity. Nor did the court intend to say, or to intimate, that an assessment for street improvements could be lawfully made in a

different mode from that prescribed by the statute, for we believe the law to be otherwise.

The power to grade streets and to assess the cost thereof against abutting property is derived solely from the statute. And, in this state, the legislature has seen fit to provide that such assessments shall be made upon the lands fronting on the street improved "in proportion to the benefits upon the property to be benefited, sufficient to cover the total expense of the work to the center of the street on which it fronts." (Gen. Stat. § 678.) Although this statute is mandatory, it seems not to have been followed in these cases. There is no certificate of the assessor or council attached to the alleged assessment roll, which is made a part of the record, stating how the assessment was made, and the roll itself shows on its face that the lots therein described were assessed according to frontage. That alone would not be conclusive against the validity of the assessment, for it might be possible for property to be really benefited in proportion to its extent along the street. But it will not do, under our statute, to make the number of lineal feet of lots along a street the basis of the assessment, and assume, without inspection or examination, that the property to be assessed is benefited in proportion to its frontage. Benefits can only be ascertained by the exercise of judgment on the part of the assessing officer, or body, and the result contemplated by law can only be reached by taking into consideration the condition in which the property will be left by the proposed improvement and how it will thereby be affected. This was not done in these cases. The assessor, according to his own testimony, based his assessment upon the number of front feet of the respective lots, which he ascertained from a map of the town. He did not even undertake to determine, as a matter of fact, how much any particular lot would be benefited by the

improvement, but simply assumed that all the lots would be equally benefited in proportion to size. This was not a mere error of judgment, for no judgment was exercised at all. It therefore follows that the lands of the respondents were not legally assessed. And that being so, no lien was created thereon in favor of the town, and the foreclosure proceedings should have been dismissed for that reason. The appellant, however, is not precluded by our ruling from having a proper assessment levied under the act of March 9, 1893 (Laws, p. 226).

Being of the opinion that the assessment was void, it is not deemed necessary to determine other questions discussed in the briefs of counsel.

The judgments are affirmed.

DUNBAR, C. J., and STILES and SCOTT, JJ., concur.

HOYT, J., dissents.