[Argued September 13; decided November 5, 1894.]

## CHANCE *v.* CITY OF PORTLAND.

[S C. 38 Pac. Rep. 68.]

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—ACCEPTANCE BY COUNCIL. —Where a public improvement has been made under an ordinance requiring the work to be completed in accordance with certain requirements, and to the satisfaction of the common council, and it appears that the requirements have been substantially complied with, and that the council, acting honestly and in good faith, has accepted the work, such action is conclusive upon the abutting property owners who have to bear the expense, and they will not be heard to complain that the work was improperly or carelessly performed.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This suit was instituted on October twenty-seventh, eighteen hundred and ninety, by twenty-seven property owners whose lots abut upon Second and South Second Streets, between the south line of Montgomery Street and the south line of Sheridan Street, in the City of Portland, to restrain the defendants from collecting an assessment levied for the purpose of making a street improvement. On June fifth, eighteen hundred and eighty-nine, the plaintiffs and others, being the owners of more than two thirds of the adjacent property, petitioned the common council of the City of Portland to improve the street above described "by grading the same to the proper grade, and laying sidewalks and crosswalks, and by graveling the roadway full length, without stone gutters at the intersections, provided the graveling shall be in two layers, and the lower layer shall be nine inches thick at the middle of the roadway, and seven inches thick at the gutters, and the upper cover shall be of cement gravel, two inches in thickness over the whole roadway, and no gravel in this course shall be larger than will go through a ring one half inch in diameter, and no gravel of the upper four inches

of the lower course shall be larger than two inches in diameter, and the whole roadway shall be wetted and rolled in the manner provided for finishing macadam," such improvement to be made in accordance with the ordinances and regulations of the City of Portland.   On June eighteenth, eighteen hundred and eighty-nine, the committee on streets reported, recommending that the prayer of the petitioners be granted.   On August sixth, eighteen hundred and eighty-nine, by ordinance number six thousand two hundred and sixty-six, the probable cost of such improvement was ascertained and determined, and the proportionate share thereof duly assessed against each lot or parcel thereof affected thereby.   A proper statement was thereupon entered in the docket of city liens, whereby such assessment became a lien upon the several lots or parcels of land for the respective amounts assessed against them.   After due notice the common council, on August ninth, eighteen hundred and eighty-nine, passed ordinance number five thousand eight hundred and fifty-three, directing the improvement to be made in the manner prayed for in the petition, and by ordinance number five thousand nine hundred and nine, adopted September twenty-third, eighteen hundred and eighty-nine, amended the same in some unimportant particulars.   It contains, among other provisions, the following: "Section 7. The improvements shall be completed to the satisfaction of the common council of the City of Portland."   The contract for making said improvement was let to one Jasper Ward.   After its completion he filed a notice in the office of the auditor and clerk on the twentieth day of August, eighteen hundred and ninety, to the effect that he had completed the same in accordance with ordinance number five thousand nine hundred and nine, and his contract therefor; and on September third, eighteen hundred and ninety, the common council by resolution accepted said improvement.   A re-

monstrance against the acceptance of said improvement signed by plaintiffs and others was ordered placed on file September sixteenth, eighteen hundred and ninety, although it appears to have been presented to the common council on August twenty-eighth, eighteen hundred and ninety.

The cause was referred to J. C. Flanders to take the testimony, and report his conclusions of fact and law. Among other conclusions of fact, the referee found as follows: "IX. The manner of placing the material on the street was as follows: The largest stones in the gravel were laid by hand on the bottom of the roadbed, or else raked thereon when dumped from the wagon. These stones ranged from four to twelve inches or more in diameter. Above this layer, and constituting the second course (this being the upper four inches in the bottom layer referred to in the petition), was placed smaller gravel, a portion of which was small enough to go through a two-inch ring and the balance of which averaged from three to four inches. In this second course some larger gravel was also intermingled with the smaller, but in the laying of the street a portion of the largest stones were picked off, and either placed on the bottom of the roadbed, or else hauled away. A top dressing of cement gravel of the required depth was placed upon the second course.  *  *  *  Stones from two inches up were mingled with this top dressing, but prior to the completion of the street they were picked up and hauled away.  X.  The street, as improved under the ordinance, is more or less muddy in the winter time, but not more so than usual in case of a gravel street improved with top dressing of cement gravel, and subject to the same amount of traffic. During the rainy season stones from three to ten inches in diameter work to the surface of the street. It is usual in gravel improvements for the larger stones to work from the bottom to the surface when

the street is subjected to travel.   At different times the
larger rocks coming to the surface have been removed
from the street by the street cleaning department of the
city.   XIII.   The condition of the street since the im-
provement has been and is superior to its condition before
the improvement.   The street has preserved its shape,
and presents a good wearing surface, and is in as good
condition as other streets improved with gravel at the
same time.   No evidence has been offered upon which a
finding can be made as to what would be the difference at
the present time between the condition of the street if
laid in strict conformity with the ordinance and the actual
condition at present.   XIV.   At and during the time
while said gravel was being placed on the street certain
of the plaintiffs remonstrated both to the contractor,
Ward, and his foreman, and also to Fliedner, the chair-
man of the committee on streets of the common council
of said city, against the size of gravel placed on the
street, and the method of laying the same; and before
said improvement was finally accepted by the City of Port-
land, but after said improvement was completed, a written
remonstrance was filed by plaintiffs with said common
council remonstrating against the manner in which said
improvement was made, and requesting that said con-
tractor be required to make said street conform to the re-
quirements of the ordinance.   This remonstrance was
disregarded by the common council, and said street was
accepted and warrants ordered drawn against the im-
provement fund for said street.   XVII.   The officers and
agents of the defendant, the City of Portland, acted hon-
estly and in good faith in their supervision of the work,
and in the acceptance of the street."

At the trial, on motion to affirm the report of the ref-
eree, the court struck out the latter clause of finding num-

ber thirteen and made a substitute finding for number fifteen, and in all other respects affirmed the referee's conclusions of fact. So much of said substituted finding number fifteen as is necessary to state herein is as follows: "XV. That while said improvement was not done in strict compliance with the specifications thereof, it was a substantial performance of the contract therefor, and the ordinance authorizing the same, and was so intended by the contractor and accepted by said city in good faith as such." The referee's conclusions of law were favorable to plaintiffs, but were modified by the court, which found in effect that plaintiffs were entitled to a decree making perpetual the injunction so far as it related to said respective assessments in excess of seventy per cent. thereof, and for their costs and disbursements, and that the defendant the City of Portland was entitled to collect seventy per cent. only of such assessments, without interest. A decree was accordingly entered in conformity with such findings, from which both parties to the record appeal. The relative rights of the parties are to be determined from this statement.        REVERSED.

*Messrs. Wallace McCamant,* and *Emmet B. Williams* (*Messrs. Richard Williams* and *Zera Snow* on the brief ), for Plaintiffs.

*Mr. Jarvis V. Beach* (*Mr. Roscoe R. Giltner,* corporation counsel, on the brief), for Defendants.

Opinion by MR. JUSTICE WOLVERTON.

It is conceded by the plaintiffs that the local assessment now under consideration, and all proceedings pertaining thereto, up to and inclusive of the letting of the contract to Jasper Ward, were and are perfectly regular, and within the legitimate powers of the common council of the City of Portland; but it is contended that the contractor

did not make the improvement in all respects in compliance with the ordinance, and that therefore the assessment is void, and the plaintiffs are entitled to a perpetual injunction against the enforcement thereof. It is certainly beyond the power of the common council to make a different kind of improvement from that described in the ordinance, or to contract for one thing and accept something different in its stead, as otherwise all statutory restraints upon the action of the local authorities in such cases would be of no more force or effect than they would see fit to give them. Mr. Elliott, in his work on Roads and and Streets, 414, says that "while the property owners are not parties to the contract, they have a beneficial interest in it, and this interest cannot be divested by the subsequent acts of the local authorities. Where the contract has been duly awarded, and the work commenced, the highway officers have no right to annul or disregard it. The contract, when once entered into, creates rights which the local officers cannot destroy. Nor can the local officers rightfully dispense with the performance of any material part of the contract, for, as the property owners are the persons who must pay for the improvement, they have the right to demand that the work shall be faithfully and properly done." And again, at page 438, he says: 'We suppose that there could not, in any event, be a recovery if it should appear that there was a radical and material departure from the contract in the character of the work, since it must be true that if the work does not fairly and substantially conform to the provisions of the ordinance or resolution on which the contract is founded, the property owner is assessed without notice, as he could not have notice of any other work than that for which the ordinance, resolution, or order provides." See also *Schumm* v. *Seymour*, 24 N. J. Eq. 147.

A large amount of testimony has been taken to deter-

mine the fact as to whether or not the contract for making the improvement has been performed in accordance with the provisions of ordinance number five thousand nine hundred and nine, both as regards the materials used and the manner of doing the work. Much of this testimony is irreconcilably conflicting, and it would be a useless undertaking for us to discuss it in detail, or to consider its relative weight and application, as we are fully satisfied, from a careful and critical review thereof, that the findings of the referee and the court hereinbefore set forth are in accordance with the weight of such testimony. The only particular in which the contract appears not to have been complied with is found both by the referee and the court below in the following language: "Above this layer and constituting the second course (this being the upper four inches in the bottom layer referred to in the petition), was placed smaller gravel, a portion of which was small enough to go through a two-inch ring, and the balance of which averaged from three to four inches," and the court properly finds in its substituted finding number fifteen, "that while said improvement was not done in strict compliance with the specifications thereof, it was a substantial performance of the contract therefor, and the ordinance authorizing the same, and was so intended by the contractor, and was accepted by said city in good faith as such." The referee and the court both further find (conclusion of fact number seventeen): "The officers and agents of the defendant, the City of Portland, acted honestly and in good faith in their supervision of the work, and in the acceptance of the street." It may be further remarked that the ordinance provided that such improvements should be completed to the satisfaction of the common council of the City of Portland.

Here, then, is presented the question whether a street assessment can be declared null and void, and its collec-

tion perpetually enjoined, when it appears that the conditions and specifications of an ordinance providing for a street improvement for which the assessment was made have been substantially complied with by the contractor in making such improvement; that the officers and agents of the city acted honestly and in good faith in the supervision of the work, and that such improvement was completed to the satisfaction of the common council, and by said common council accepted in good faith. Undoubtedly, under such conditions, where there has been a substantial compliance with the ordinance which prescribes the mode in which the improvement shall be made, and the common council has honestly and in good faith accepted the improvement as satisfactory and completed in accordance with the ordinance, such acceptance is conclusive upon the abutting property owners: Cooley on Taxation (2d ed.), 671; Elliott on Roads and Streets, 416; *Town of Elma* v. *Carney,* 9 Wash. 466, 37 Pac. 707; *Motz* v. *City of Detroit,* 18 Mich. 515. Indeed, many authorities hold generally that when work has been accepted by the proper authorities of a city, and there is no allegation of fraud or collusion, such acceptance is conclusive evidence that the work was performed according to the requirements of the contract: See Cooley on Taxation (2d ed.), 671; *City of Henderson* v. *Lambert,* 14 Bush, 30; *Ricketts* v. *Village of Hyde Park,* 85 Ill. 113; *Emery* v. *Bradford,* 29 Cal. 83; *Joyes* v. *Shadburn,* 13 S. W. 361. But it is not necessary for us to go thus far in the present case. There was a substantial compliance with the ordinance, so that it cannot be alleged that fraud is even implied by reason of there being a wide difference between the work required by the ordinance and the work actually done. There is here no violation of the trust relations which exist between the officers of the municipality and the abutting property holders whose property is charged

with the assessment. Neither fraud nor collusion is exhibited by the complaint on the part of the officers, and their authority throughout the whole proceedings, as shown by the testimony, appears to have been exercised within the limitation of their powers under the charter, and they have acted at all times in the utmost good faith. The acceptance of the improvement by the common council under these conditions is conclusive upon the defendants. It could not be promotive of good results to hold otherwise, as it would make the courts revisory bodies for every city government within the state, and open wide the doors for contests of this nature upon collateral proceedings like the present. By so doing the courts would usurp a large portion of the administrative powers of municipal governments. They have no such authority, and cannot interfere with the discretionary powers of such governments. These matters of discretion and authority must remain with the officers intrusted therewith under the law without molestation or interference by the courts. It follows that the defendants are entitled to a decree dismissing the complaint, and it is so ordered.

REVERSED AND DISMISSED.