[No. 5691. Decided December 18, 1905.]

THE CITY OF NORTH YAKIMA, *Respondent,* v. HENRY B. SCUDDER *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS. A lien for a municipal assessment for local improvements is not rendered void by reason of mere irregularities.

APPEAL—REVIEW—ESTOPPEL. An ordinance offered in evidence and excluded at appellant's instance cannot be considered on appeal.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—RESOLUTION OF INTENTION—CHANGES AND REPUBLICATION TO CORRECT INACCURACIES—SUFFICIENCY—STATUTE. A statute requiring the city counsel to first publish notice of its intention to make a local improvement, stating the name of the street to be improved and an estimate of the cost, is substantially complied with so that there is no jurisdictional defect, where the required resolution and ordinance were passed before

[1] Reported in 82 Pac. 1022.

the improvement was commenced, and the proceeding is not affected by the fact that, owing to a miscalculation or mistake, the original date for hearing was changed by the clerk by direction of the council before publication, and a second publication of the ordinance was had for the purpose of correcting an error, the resolution having specified the improvements and misleading no one, and when, by reference to the records, all necessary information could have been obtained.

SAME—FAILURE TO SHOW ESTIMATED COST—ESTIMATE ON FILE—SUFFICIENCY. A municipal assessment for local improvements is not invalidated by reason of the fact that the notice, which was required to state an estimate of the cost, left the amount blank, since the property owners were thereby put on inquiry and from the estimate on file could have ascertained the amount.

SAME—PUBLICATION—OFFICIAL PAPER. An objection that notice of a municipal assessment for local improvements was not published in the official paper is unavailing where the paper had been designated as the official paper for a certain term, which had expired without the designation of any other official paper, since it was the *de facto* official paper for the purposes of the publication.

SAME—LETTING CONTRACT—ACT OF CITY COUNCIL—CONCLUSIVENESS. The objection that in letting a contract for a local improvement, the city council did not act to the best advantage, does not raise a jurisdictional question, but goes only to the discretion of the council, which will not be reviewed except for fraud or collusion.

Appeal from a judgment of the superior court for Yakima county, Rudkin, J., entered August 2, 1904, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, foreclosing a local improvement assessment lien. Affirmed.

*Henry J. Snively,* for appellants.

*Ira P. Englehart, James O. Cull* and *C. E. Forsyth,* for respondent.

DUNBAR, J.—This is an appeal from a judgment foreclosing a lien for the improvement of Second street in the city of North Yakima. Many of the assignments of error involve mere irregularities which, if conceded, would not render the assessment void, under the rule announced in *Tumwater v. Pix,* 18 Wash. 153, 51 Pac. 353, and many subsequent cases.

So that we feel it incumbent upon us to discuss here only those alleged actions and omissions which go to the jurisdiction of the city officers to make the improvements and levy the assessment, and as to those questions, it seems to us that the objections raised to the jurisdiction are more technical than meritorious. As to the argument of appellants in relation to the differences between ordinances 327 and 331, it appears that ordinance 331 was not received in evidence, but was excluded on appellants' objection. Hence, this court cannot take cognizance of it.

The statute upon which the jurisdiction of the city council to make the improvement and levy the assessment must rest (Pierce's Code, § 3495) provides that,

"The city council shall, before or during the grading, paving or other improvement of any street or alley, the cost of which is to be levied and assessed upon the property benefited, first pass a resolution or ordinance declaring its intention to make such improvement and stating in such resolution or ordinance the name of the street or alley to be improved, the points between which the said improvement is made, and the estimate of the cost of the same, and the cost of the same is to be assessed against the property abutting (and included in the assessment district herein provided) on such street proposed to be improved, and shall fix a time not less than ten days in which protests against such proposed improvement may be filed in the office of the city clerk. It shall be the duty of such clerk to cause such resolution to be published in the official newspaper of the city in at least two consecutive issues before the time fixed in such resolution for filing such protest, . . ."

The statute seems to be a little inconsistent, in that it provides that the council shall, "before or during the improvement," first pass a resolution declaring its intention to make such improvement; but, placing the construction on the statute which requires the resolution to be passed before the improvement commences, we think the record shows that there was at least an honest attempt on the part of the council

2—41 WASH.

to comply with the mandatory provisions of the statute. The required resolution of intention and the ordinance were passed, and the publication was made, and the testimony of the clerk shows that there was really but one ordinance passed. The ordinance describes the street to be improved, so that there could not be intelligent doubt in the mind of any one desiring to be informed as to its location and the location of the lots subject to the assessment. The difference in the time specified in the original resolution, or the resolution which was really passed, and that in the resolution which was published, is accounted for by the testimony of the clerk, which is as follows:

"Q. Just look at this paper. What is it Mr. Doust? A. Resolution of intention about curbing, guttering and macadamizing Second street between certain points. Q. What is this interlineation here? What does it mean? A. Why, this was because—it had reference, if I remember right, and I think I am positive in it—that at the time this was issued the official paper at that time doing the printing could not take care of this, so the time was extended over for the publication, and the time for protest. Q. In this resolution it says 'to appear on the 2nd day of June, 1902,' originally. This date was put in by whom? A. By myself. Q. Who asked you to change the notice? A. It was done in the council by my stating to them that it was impossible for them to get it in until that date, so that the protest could go in of that date and give them sufficient time to publish it. Q. They changed the date themselves? A. They changed the date. Q. Were they in regular session? A. They were in regular session, and I drew their attention to the fact that we could not get it in on that date according to the typewritten copy. Q. It was published on the 16th under the direction of the council? A. Yes, sir."

A like explanation by the same witness was made as to the publication of the alleged second ordinance.

"Q. Now, the ordinance that was changed; was this ordinance published by you? A. Yes, sir. Q. There is an ordinance relative to the improving of Second street known as

ordinance No. 327. That is, an ordinance published known as Ordinance No. 327; and also an ordnanice known as No. 331, both relating to the improving of Second street. Why was the second ordinance printed? A. Because the original ordinance giving the improvement district number gave the number wrong; there had been an improvement district advertised of that number, and we had to re-publish to get the proper improvement district on the list in the rotation. Q. So that you re-pulished the ordinance which was originally published? A. It was supposed to be. Q. You went to work and published that for the purpose of correcting it? A. For correcting the error in the number of the district. Q. But the ordinance passed was No. 327? A. 327 was the original. The Court. The ordinances are the same in all respects? A. Except in the first ordinance it is designated as improvement district No. 33 and in the second ordinance designated as improvement district No. 35. Q. As a matter of fact, were two ordinances passed? A. No, sir; the records show one. The first ordinance was the only ordinance passed in the council."

So that it plainly appears that there was but one ordinance passed, and while it is true that the changes were made upon the suggestion of the clerk, they were actually made by order of the council. It seems to us that the jurisdictional requirements were substantially complied with, and the informalities or seeming irregularities could in no wise mislead any one who took notice of what was actually published and which purported to be notice to the owners of the lots affected by the ordinance; and a substantial compliance with the law is all that will be required. Members of city councils are not presumed to be technical lawyers or trained parliamentarians. They transact the business of the city in a plain, straightforward way, and courts will not examine their proceedings with that nicety of discrimination in which they indulge in passing upon the proceedings of courts of record, which are presumptively presided over by men learned in the law and capable of detecting technical flaws which must necessarily escape the notice of minds not trained in that

particular. For it is manifest that, if city councils were held to such technical requirements, very little could be legally accomplished by them; the necessary improvement and progress of cities would be impeded; and the ends and aims of the law defeated.

An examination of the case of *Buckley v. Tacoma,* 9 Wash. 253, 37 Pac. 441, upon which appellants so confidently rely, convinces us that that case is not in point. It was decided upon the theory that certain provisions of the charter of the city of Tacoma which confer jurisdiction had not been complied with, and that no resolution which the charter provided for had been passed ordering the improvement or defining the work to be done. So that, that which was contemplated could not be ascertained by any engineer, and there had been no estimate made of the same. This was probably an extreme case, but reference thereto shows conclusively that it was based upon omissions of jurisdictional requisites which are not involved in this case. Here the resolution was published, the improvements were fully specified, and by reference to the plans, specifications and details then on file in the office of the city clerk, all necessary information could have been obtained.

It is also contended that there was no publication of the resolution, within the contemplation of the statute, because the estimate of the improvements was not incorporated but was left blank, the published resolution in that respect appearing as follows, "That the estimated cost of said improvement is $———." This was so apparently a clerical error that it must have been so understood by any one reading the resolution, for the presumption could not be indulged that the improvement would not cost anything. The form in which it was published affirmatively shows that it would cost *some* number of dollars, but that the number of dollars was left blank. The property owner was thus given notice that, if he was interested in the amount of the estimate, he must inquire further. He knew that the original resolution

would be on file subject to inspection, and that an estimate
would also have to be made, which was also on file. The
means were at hand for supplying the defect in the notice, and
if he did not avail himself of such means, after being put
upon inquiry, he cannot complain of want of knowledge and
will not be held to be injured.

"The objection that the notice of an improvement did not
exactly conform to the specifications is unavailing if the
objector is not injured thereby." Smith, Modern Law of
Mun. Corp., § 1233.

In *Felker v. New Whatcom*, 16 Wash. 178, 47 Pac. 505,
it was held that, where due notice of intention to improve
a certain extent of street is given, the property owner cannot
complain of want of notice by reason of the fact that subse-
quently another notice is published covering an improvement
for which the former notice was given and a continuation of
such improvement, although the subsequent publication may
not afford notice for such length of time as the law requires;
and in sustaining the view that such proceedings were to be
liberally construed, cited approvingly Elliott on Roads and
Streets, pp. 431, 432 where it is said:

"If the property is well described and the officers have done
all that reasonable diligence enabled them to do, the assess-
ment should be upheld. Immaterial inaccuracies in naming
the owners ought not to be allowed to defeat the proceedings.
Where the assessment is made by a municipal corporation,
and for the improvement of a street, there is much reason
for giving little weight to errors in names if the property
assessed is properly described, since from the nature of the
proceedings and the character of the improvement it is hardly
conceivable that an owner can be ignorant of what has been
done, and if he knows the facts, he must know, as matter of
law, that his property is liable for the assessment."

These remarks might properly be applied to the objections
raised by the appellants in this case which we have so far
discussed.

As to the contention that the law required the publication

to be made in the official newspaper, and that there was no showing that the Yakima Democrat was the official paper, it appears that the Democrat had been the official paper of the city, but that the time for which it had been designated had expired and no official paper had been designated. If there was any official paper, it was the Yakima Democrat; and if there was not, some paper must necessarily be chosen, and the Democrat in this case was chosen and would, in any event, be *de facto* the official paper for the purpose of this publication.

The complaint urged by the appellants that the city authorities did not act to the best advantage in letting the contract is not a jurisdictional question, and, even if it were to be admitted that a better bargain might have been made, it seems to be established that questions of this kind, in the absence of collusion or fraud, are submitted to the discretion of the city council, and that its action in that respect is binding upon the property owners. Mr. Elliott, in his work on Roads and Streets (2d ed.), § 586, states the rule thus:

"By some of the courts it is held that the acceptance of the work by the highway officers is only *prima facie* evidence that it has been done according to contract, and this is obviously correct in cases where the statute gives the right of appeal and, either expressly or by fair implication, authorizes the trial of all questions on appeal, or expressly enumerates what shall not be tried, and does not include in the enumeration the question whether the work was or was not performed as the contract requires. According to the great weight of authority the rule, in the absence of a statute granting a right to contest the question whether the work has been done in conformity to the terms of the contract, is that the acceptance by the highway authorities is conclusive upon the property owners."

The author then states that it is not without dissent that this rule has found general favor, and personally criticizes it unfavorably. But there are no authorities that go to the extent of holding that, in the absence of fraud or collusion,

the acceptance by the city is not conclusive upon the property owners. This question was also squarely decided by this court in *Elma v. Carney,* 9 Wash. 466, 37 Pac. 707, where it was held that the conclusion of a town council that the work done under a contract let by it for the grading of a street has been properly performed, cannot, in the absence of bad faith or palpable mistake, be set aside by the courts; citing Cooley on Taxation (2d ed.), 671. The case of *Haisch v. Seattle,* 10 Wash. 435, 38 Pac. 1131, did not intend to overrule this case or to lay down any doctrine in conflict with it.

There is nothing in the record indicating that the assessment was not made with reference to benefits. It appearing that the substantial requirements of the statute had been complied with by the city council, and that the appellants had the notice which the law contemplated, and no errors appearing in the trial in the superior court, the judgment is affirmed.

MOUNT, C. J., HADLEY, FULLERTON, CROW, and ROOT, JJ., concur.