[No. 10188. Department Two. February 8, 1913.]

R. A. HUTCHINSON *et al.*, *Appellants*, v. THE CITY OF
SPOKANE *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS — PROCEEDINGS—
PETITION—ALTERATION—EVIDENCE—SUFFICIENCY. The evidence is in-
sufficient to show that a petition for a street improvement had been
changed after it was signed, where the testimony to that effect of
some of the signers was indistinct and uncertain, and was contra-
dicted by the person who circulated the petition and inconsistent
with the ordinances, specifications, contract and all the proceedings,
and no objection was made until the contract was substantially com-
pleted.

SAME—PERFORMANCE OF CONTRACT—ACCEPTANCE—CONCLUSIVENESS.
Where a contract for public work has been substantially complied
with, the decision to that effect by the board of public works and
city engineer, vested with power to determine all questions relating
to the performance of the contract, is final and conclusive, in the
absence of fraud.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered September 6, 1911, upon
findings in favor of the defendants, after a trial on the merits
before the court without a jury, dismissing an action to en-
join the collection of a special assessment for street improve-
ments. Affirmed.

[1]Reported in 129 Pac. 892.

*Peacock & Ludden,* for appellants.

*A. M. Craven, W. E. Richardson,* and *Graves, Kizer & Graves,* for respondents.

Crow, C. J.—This action was commenced by twenty-four property owners within an assessment district, to enjoin the city of Spokane from collecting a special assessment for the grading and paving of Arthur street and Newark avenue. The Spokane Asphalt Macadam Paving Company, a corporation, the contractor, with leave of court, intervened and joined in defending the action. From an order of dismissal, the plaintiffs have appealed.

The record shows that, with two exceptions, the owners of all property abutting on Arthur street and Newark avenue between Ivory and Third avenues petitioned for the improvement, using a printed form which reads as follows:

"The undersigned owners of property fronting upon Newark and Arthur between Ivory and Third Ave. . . . respectfully petition your honorable body to cause said streets to be improved within said limits at the expense of the owners of the property, in accordance with section 61, city charter, said improvements to consist of grading the same to the established grade, the full width thereof; and by building———sidewalks on both sides thereof, said grade to be as per diagram, to be made by the city engineer."

At the time the petition was filed, a typewritten slip had been pasted over that portion of the above excerpt following the words "city charter," causing the petition to read as follows:

"Respectfully petition your honorable body to cause said streets to be improved within said limits at the expense of the owners of the property in accordance with section 61, city charter; said improvements to consist of paving same with 'Oileroid' pavement on a macadam foundation, according to the specifications drawn and now on file in the office of the city engineer; cost of same not to exceed $1.50 per square yard; curb to be made of cement."

Appellants alleged, and asked the trial court to find, that after the petition had been signed, it had been changed by attaching the typewritten slip; that the change was made without their knowledge or consent; that it was acted upon by the city; and that an ordinance was passed authorizing an oileroid, or oil and rock pavement, and not an asphalt, macadam or other substantial pavement as originally understood and intended by the petitioners. Appellants contend that the alleged change in the petition was fraudulent, but do not specify the person by whom it was made. Some of the petitioners testified that the typewritten slip was not on the petition when they attached their signatures, but they were so indistinct and uncertain in their recollection of the contents of the petition which they claim they did sign that we conclude they must have been mistaken. The person who circulated the petition, a disinterested party, testified that no change had been made after any signature was obtained. There is no contention that the petition when filed with the city was not in its present condition. If the petition be considered with the slip removed, the only improvement thereby requested would be the grading of the street and the building of sidewalks, without indicating any character of sidewalks or calling for any street pavement whatever. It is conceded that the contemplated inprovement was to be a street grade and pavement, and not any sidewalk construction. Our finding is that the petition was not changed after the signatures or any of them had been obtained. This finding is supported by the undisputed fact that the ordinance enacted by the council, the specifications prepared by the city engineer, and the contract with the intervener, all called for and contemplated an oileroid pavement, and by the further fact that no question as to the pavement intended was raised until the work was substantially completed, when some of the appellants interposed objections and complained that the street pavement as constructed would be valueless and of no benefit to the abutting property.

Appellants contend that the improvement as constructed does not comply with specifications adopted by the city engineer, although the engineer has found that it does. They further contend that the pavement is worthless, unfit for travel, and a detriment to their property. After hearing the evidence the trial court found, that the contractor had exercised the utmost good faith and diligence in carrying out the specifications; that the city, through its proper authorities, exercised like good faith and diligence in seeing that the work was done according to the contract; that the work was performed in all substantial and essential respects according to the contract and specifications; that any immaterial deviations from the specifications that might have occurred were such as ordinarily occur in the doing of any work of like character, and had no detrimental effect upon the results obtained; that such defects as appeared in the completed work are inherent in the nature and plan of the improvement specified by the contract, and that they are such as would inevitably result from constructing the character of street improvement thereby proposed.

Without stating the conflicting evidence, which we have carefully examined, we conclude that it sustains the findings made. The situation seems to have been that the appellants petitioned for an oileroid macadam pavement of limited cost, and that they have obtained the pavement for which they petitioned. Evidence of expert engineers, who testified on behalf of appellants and also on behalf of respondents, was to the effect that such a pavement would necessarily be inferior in quality and usefulness to other well known street pavements such as asphalt or brick. When the pavement for which appellants petitioned was constructed, it did not meet their expectations, and being dissatisfied, they now seek to avoid payment of the assessment, although, as shown by the evidence, the contractor has done the work in substantial compliance with the contract and specifications. The power and authority to determine all questions relating to the per-

formance of the contract was by its terms vested in the board of public works and city engineer, and their decision as to whether the work was properly performed should be final and conclusive.  It is a well established rule of law that, in the absence of fraud, the decision of officials having this power concludes all interested parties.  28 Cyc. 1137; 1 Elliott, Roads and Streets (3d ed.), 654; *Elma v. Carney,* 9 Wash. 466, 37 Pac. 707; *North Yakima v. Scudder,* 41 Wash. 15, 82 Pac. 1022; *Morehouse v. Clerk of Edmonds,* 70 Wash. 152, 126 Pac. 419; *State ex rel. Murphy v. Coleman,* 71 Wash. 15, 127 Pac. 568; *Chance v. Portland,* 26 Ore. 286, 38 Pac. 68.

In the case last cited, the supreme court of Oregon has stated the rule in language which we regard as especially pertinent to the instant case, and from which we will quote at considerable length.   Speaking through Mr. Justice Wolverton, the Oregon court said:

"Here, then, is presented the question whether a street assessment can be declared null and void, and its collection perpetually enjoined, when it appears that the conditions and specifications of an ordinance providing for a street improvement for which the assessment was made have been substantially complied with by the contractor in making such improvement; that the officers and agents of the city acted honestly and in good faith in the supervision of the work, and that such improvement was completed to the satisfaction of the common council, and by said common council accepted in good faith.   Undoubtedly, under such conditions, where there has been a substantial compliance with the ordinance which prescribes the mode in which the improvement shall be made, and the common council has honestly and in good faith accepted the improvement as satisfactory and completed in accordance with the ordinance, such acceptance is conclusive upon the abutting property owners:   Cooley on Taxation (2d ed.), 671; Elliott on Roads and Streets, 416; *Town of Elma v. Carney,* 9 Wash. 466, 37 Pac. 707; *Motz v. City of Detroit,* 18 Mich. 515.   Indeed, many authorities hold generally that when work has been accepted

by the proper authorities of a city, and there is no allegation
of fraud or collusion, such acceptance is conclusive evidence
that the work was performed according to the requirements
of the contract: See Cooley on Taxation (2d ed.), 671;
*City of Henderson v. Lambert*, 14 Bush. 30; *Ricketts v.
Village of Hyde Park*, 85 Ill. 113; *Emery v. Bradford*, 29
Cal. 83; *Joyes v. Shadburn*, 13 S. W. 361. But it is not
necessary for us to go thus far in the present case. There
was a substantial compliance with the ordinance, so that it
cannot be alleged that fraud is even implied by reason of
there being a wide difference between the work required by
the ordinance and the work actually done. There is here
no violation of the trust relations which exist between the
officers of the municipality and the abutting property hold-
ers whose property is charged with the assessment. Neither
fraud nor collusion is exhibited by the complaint on the part
of the officers, and their authority throughout the whole pro-
ceedings, as shown by the testimony, appears to have been
exercised within the limitation of their powers under the
charter, and they have acted at all times in the utmost good
faith. The acceptance of the improvement by the common
council under these conditions is conclusive upon the defend-
ants. It could not be promotive of good results to hold
otherwise, as it would make the courts revisory bodies for
every city government within the state, and open wide the
doors for contests of this nature upon collateral proceedings
like the present. By so doing the courts would usurp a
large portion of the administrative powers of municipal gov-
ernments. They have no such authority, and cannot inter-
fere with the discretionary powers of such governments.
These matters of discretion and authority must remain with
the officers intrusted therewith under the law without moles-
tation or interference by the courts. It follows that the de-
fendants are entitled to a decree dismissing the complaint,
and it is so ordered."

Appellants are disappointed in the street improvement, but
from the evidence we conclude that they have obtained the
identical improvement for which they petitioned; that the
contractor has completed it in accordance with the specifica-
tions to the satisfaction of the city engineer; that no fraud

has been shown; and that appellants have no just cause of complaint.

The judgment is affirmed.

PARKER, ELLIS, and GOSE, JJ., concur.