105    353
a204s  373

## City of Chicago v. Charles E. Cook.

1. PRACTICE—*Filing Additional Plea—Statute of Limitations.*—Where, after the trial has begun, defendant's attorney moves the court for leave to file a plea of the statute of limitations, presenting such a plea in writing, but not supported by affidavit or otherwise showing any excuse for not filing the plea earlier, there is no abuse of discretion by the court in overruling the motion.

2. STATUTES—*Sec. 53, Art. 9, of the Municipal Incorporation Law.—Construction of Word " Costs."*—The word " costs," as used in Sec. 53, Art. 9, of the municipal incorporation law, does not include the expense of employing a person to estimate the damage to buildings and other structures by the improvement, for the making of which the supposed prior condemnation proceedings were instituted.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed January 8, 1903.

CHARLES M. WALKER, corporation counsel, WILLIAM H. SEXTON, assistant corporation counsel, and WILLIAM H. FITZGERALD, attorneys for appellant; FITZGERALD & ORR, of counsel.

CLARENCE S. DARROW and IRVING W. BAKER, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee and against appellant, for the sum of $5,000, rendered in an action of assumpsit. The plaintiff is a contractor and builder, and was employed by the city in a large number of cases to estimate the damage which would accrue to buildings and structures of private owners, by reason of the taking or damaging of private property, in condemnation proceedings for public improvements, which the defendant, the city, proposed to institute or had instituted; and also to estimate the damages to buildings or other structures belonging to private owners, which had been damaged by the making of public improvements by the city, and in respect to which such owners had sued the city. The evi-

dence for the plaintiff tends to prove that the reasonable value of his services is $6,070.06, and there is no evidence to the contrary. It is not specified as ground for a new trial, nor assigned as error, that the damages are excessive, nor is it contended by appellant's counsel that the employment of appellee was, in any instance, unauthorized, and it is obvious that services such as he rendered are necessary in the class of cases in which he was employed.

The only reasons urged by counsel for appellant for reversal of the judgment are, first, "The verdict and judgment are not supported by the evidence," and second, "The court erred in refusing leave to appellant to file a special plea of the statute of limitations." The suit was commenced June 24, 1897. A bill of particulars was filed June 2, 1898. An amendment thereto was filed October 12, 1898, and a further amendment December 8, 1898. The bill of particulars, as amended, sets forth, by items, and with sufficient particularity, the matters in respect to which appellee claims to have performed the services in question. The trial commenced September 30, 1901. After one witness for the appellee had been examined in chief and cross-examined at considerable length, appellant's attorney moved the court for leave to file a plea of the statute of limitations, presenting such a plea in writing; which motion the court overruled. The motion was not supported by affidavit, or otherwise, showing any excuse for not filing the plea earlier, and there was no abuse of discretion by the court in overruling the motion. Fisher v. Greene, 95 Ill. 94; Dow v. Blake, 148 Ib. 76, 88; Millikin v. Jones, 77 Ib. 372; C. & E. I. R. R. Co. v. O'Connor, 119 Ib. 586, 595.

Counsel for appellant contend that appellee's services were legally payable only from a special fund, and that there is no evidence that there is such fund. This contention is based on the following, which occurred on the trial. Appellant's attorney offered in evidence certain petitions, for the purpose, as he stated, of showing that in cases where the improvements were made by special assessment, the ordinance provided that all costs should be paid out of the

special assessment fund. The court being averse to the admission in evidence of the petitions, it was finally admitted by appellee's attorney that, in each of the so-called assessment cases, the ordinance provided that, the whole cost should be paid by special assessment. This admission was, apparently, made with reference to the cases to which the offered petitions referred, and the petitions not being in the record, we have no means of knowing what the cases were. It is manifest from the record that none of the services performed by appellee were performed in strictly special assessment cases. Such of his services as were not performed in suits brought by the owners of property damaged by public improvements, made by the city prior to the performance of appellee's services, must have been performed in condemnation proceedings instituted or contemplated by the city; because in the case of special assessments for the improvement of streets or alleys already opened, damages to buildings or other structures are not contemplated, and therefore no estimate of damages is required. Therefore, by special assessment cases, counsel for appellant doubtless mean cases in which it was provided by ordinance that the compensation awarded in condemnation proceedings for public improvements may be raised by special assessment, as provided by section 53 of article 9 of the municipal incorporation law, which was in force when the services in question were performed. 1 S. & C.'s Stat. 1896, p. 778, paragraph 169. That section authorizes the filing of a supplemental petition, praying the court to cause an assessment to be made for the purpose of raising the amount necessary to pay the compensation and damages awarded for the property taken or damaged, with the costs of the proceeding, etc. The section further provides :

" The said court shall have power, at any time after such supplemental petition shall have been filed, to appoint three commissioners to make such assessment, and to ascertain, as near as may be, the costs incurred to the time of such appointment, and the probable further costs of the proceedings, including therein the estimated costs of making and collecting such assessment, and shall direct such costs to be included by such commissioners in making said assessment."

Appellant's counsel, if we understand them, contend that the costs of a condemnation proceeding include the expense of services such as those performed by appellee; that it must be conclusively presumed that compensation for appellee's services was included in the assessments made on the supplemental petitions, and that he can not recover, except on proof that the special assessments were collected.

We are of opinion that the word "costs," as used in the section, does not include the expense of employing a person to estimate the damage to buildings and other structures by the improvement, for the making of which the supposed prior condemnation proceedings were instituted. By a former city charter the estimate of the expense of an improvement requiring the taking or damaging of private property, was authorized to be assessed against property benefited by the improvement, but the charter was silent as to costs. Tuley's Laws and Ordinances, 1873, p. 440 *et sequens.* The court held that costs could not be assessed; Morris v. City of Chicago, 11 Ill. 650; Canal Trustees v. same, 12 Ib. 403.

These cases clearly distinguish between expenses and costs.

John Adair, who was special assessment attorney for the city from May 1, 1895, till May 1, 1897, testified, in substance:

"The expenses incident to opening these streets and assessing damages were paid by vouchers drawn on what was known as special Fund W. This was a special assessment fund. The expenses of opening streets, etc., were paid by warrants drawn on said Fund W. They did not come out of the general fund. This Fund W was an arbitrary six per cent which was added to all special assessments for the purpose of covering court costs and other incidental expenses, such as witness fees, etc. It was six per cent of the amount of the assessment, whether a special assessment for the purpose of paying for public improvements or any of other divers assessments; whether it was an assessment for the purpose of raising a fund to pay the award in condemnation cases or not. It was not part of the general fund of the city. So that whenever an improve-

ment was made, the first six per cent came out of that for general costs, and as the assessment was collected, six per cent was credited to the fund; and that was designed to pay the expenses of the special assessment bureau and its law department—not the salaries connected with the law department."

The arbitrary addition to assessments of six per cent was an illegal imposition on the owners of the assessed property.

Gosselin, who served eight years, and until about six months before the trial, in the department of public works of the city, as bookkeeper in that department, testified that since 1897 there had been no Fund W, and appellant's counsel contend that the services of appellee were payable out of that fund, and it being exhausted and non-existent, there can be no recovery. We do not find it necessary to discuss this contention, in which we do not concur, because the testimony of Gosselin shows that such services as those rendered by appellee were primarily paid for out of the general fund. Gosselin testified:

" Fund W was made up by an estimated cost of the special assessment improvements to the extent of six per cent, to pay the expenses of the special assessment department, and when collected, this six per cent was transferred by the special assessment department to the general fund, to make good the moneys paid out from it, on account of the expenses paid out to the special assessment department. When money was drawn from the general fund to pay any expenses of the special assessment department, it was transferred back from this six per cent fund to the general fund."

The witness was in charge of the books and kept the accounts in the department of public works, and his evidence conclusively shows that the fund made up of six per cent, arbitrarily added, as the witness Adair testified, to assessments, was not used directly in paying expenses such as were incurred by appellee's employment, but was, when collected, transferred to the general fund to reimburse the latter fund for special assessment expenses paid from it. Counsel for appellant cite numerous authorities to the effect that if a party contracts to be paid from a specified fund,

he must look to that fund for payment. These authorities have no application to the present case. Neither has section 49 of article 9 of the municipal incorporation law any application.

The uncontradicted evidence is that appellee did not agree to look to any particular fund for compensation for his services; that he did not even know from what fund he was to be paid. His contract is an implied one. He was simply requested at different times to do certain work, and he did the work in pursuance of such requests. It is admitted that appellee was entirely competent to do the work which he was requested to do; the uncontradicted evidence is that he did it, and that the value of his services was greater than the amount of the judgment, and we find no reason for supporting the contention of appellant's counsel that he should not be paid. On the contrary we find in the record abundant reason why he should be paid, and the judgment will be affirmed.