[No. 8863. Department One. December 16, 1910.]

## In re SOUTH SHILSHOLE PLACE.

## W. W. ROBINSON, JR., et al., Appellants, v. THE CITY OF SEATTLE, Respondent.[1]

MUNICIPAL CORPORATIONS — SPECIAL ASSESSMENTS — OBJECTIONS— WAIVER. *Semble,* that parties to a proceeding to condemn land for a city street who fail to object that the ordinance for condemnation was duplicitous cannot raise the objection on appeal from the assessment of damages (PARKER, J., dissenting).

SAME—SEPARATE STREET EXTENSIONS—ORDINANCE — OBJECTS—DU-PLICITY. An ordinance for the condemnation of several strips of land, from one-fourth to one-half a mile apart, for several streets, embraces but a single object and is not void for duplicity, where it appears from the maps that it was all one general plan to create a connected way between two points.

SAME—STREET IMPROVEMENTS — BENEFITS. The eminent domain commissioners are vested with a discretion in determining the benefits from the opening of a street, and the opening of a city street through a tract of unplatted land is presumed to be a special benefit.

SAME—COSTS AND EXPENSES. Rem. & Bal. Code, § 7787, providing that eminent domain commissioners, in assessing the property benefited, shall include all costs and expenses of the proceedings to the time when the proceeding was referred to them, and probable future costs and expenses, authorizes the inclusion of costs of preparing and serving the condemnation proceeding, and of expert witnesses, engineers' expenses, etc.

SAME—DAMAGES—GRADES—EVIDENCE — ADMISSIBILITY. In a proceeding. to assess the benefits to property by reason of the condemnation of a public street through the tract, in which it appeared that a reasonable grade would require a cut, but no grade had been established, confirmation of the assessment without inquiry into the effect of the grade is error.

Appeal from a judgment of the superior court for King county, Albertson, J., entered August 16, 1909, confirming an assessment roll for a local improvement, after a hearing on the merits. Reversed.

*Todd, Wilson & Thorgrimson,* for appellants.
*Scott Calhoun* and *King Dykeman,* for respondent.

[1]Reported in 112 Pac. 228.

GOSE, J.—The city of Seattle, by Ordinance No. 15,923, provided for the laying off, extending and establishing of South Shilshole Place, Emerson street, and an unnamed street, as public streets, and for condemning five detached tracts of land for that purpose. The ordinance provided that an assessment should be made upon the property benefited, for the purpose of compensating the owners of the property taken, and for the costs of the proceeding, in the manner provided by law. Thereafter, in obedience to the provisions of the ordinance and the statute, a jury trial was had for the purpose of ascertaining the just compensation to be made for the private property taken or damaged. After the return of the verdict, a judgment was entered whereby it was decreed that, upon payment to the respective owners or into the registry of the court of the amount found by the jury and taxable costs of the proceeding, the city should be entitled to the possession of the land taken. Damages in the sum of $2,850 were awarded to the appellants. The appellants are the owners of a tract of unplatted land through which Shilshole Place is sought to be extended. The board of eminent domain commissioners, to whom the matter was referred, prepared and filed an assessment roll, for the purpose of creating a fund with which to pay the damages awarded and the costs and expenses of the proceedings. The appellants in due time filed written objections to the assessment. This appeal was taken from a judgment confirming the assessment.

Three questions are presented; (1) it is asserted that the ordinance contains more than one subject, and that it therefore conflicts with sec. 10, art. 4, of the city charter; (2) that the assessment contains items of costs that cannot be assessed to the property; and (3) that the court erred in refusing to admit testimony in regard to the probable cut to be made upon the appellants' property. These questions will be treated in the order stated.

The appellants were parties to the condemnation proceed-

ing, and did not raise the question that the ordinance was duplicitous. A valid ordinance was a prerequisite to the right to condemn. It would seem that the point was, at that hearing, decided adversely to the present contention, and that the decree of necessity foreclosed a further hearing upon that ground. However, assuming that the question is open, under the authority of *In re Third, Fourth and Fifth Avenues, Seattle*, 49 Wash. 109, 94 Pac. 1075, 95 Pac. 862, we do not think that the objection is tenable. An examination of the maps in the record discloses that the purpose of the city in condemning the several strips of property was to create a connected way from the Lake Washington canal to Fort Lawton. To accomplish this purpose, it was necessary to condemn five separate pieces of property lying from one-fourth to one-half a mile apart. It is, however, all involved in the one general plan, and creates a continuous but sinuous course between the termini. We think the ordinance embraces but a single object. *Weed v. Goodwin*, 36 Wash. 31, 78 Pac. 36; *Seattle v. Sylvester-Cowen Inv. Co.*, 55 Wash. 659, 104 Pac. 1121.

In the *Weed* case the title of the act was: "An act providing for condemnation proceedings for right of way for irrigating ditches, canals, and flumes for agricultural and mining purposes and relating to right of appropriation of water." It was contended that there was a union of two distinct objects, viz., one pertaining to the condemnation of the right of way, and the other pertaining to rights of persons engaged in irrigation to appropriate water. It was held that neither the title to the act nor the act itself is duplicitous, and that the act would have been valid under the less detailed title of: "An act relating to the appropriation of water." In the *Sylvester* case a like objection was made to an ordinance entitled:

"An ordinance providing for the laying out, widening, extending and establishing of Meadow Place, University Boulevard and East Seventieth street, as public streets, high-

ways, boulevards and park ways in the city of Seattle, between East Green Lake Boulevard and Fifteenth Avenue Northeast, over and across certain lots, blocks, tracts and parcels of land in said city, and providing for the condemnation and appropriation to the public use as a park of certain other lands and premises adjoining and proximate thereto, and providing for the taking and damaging of land and other property necessary therefor, . . ."

It was claimed that the ordinance provided for two separate and distinct objects: (1) the condemnation of certain property for streets, and (2) the condemnation of certain other property for a park. In that case, we said:

"The charter provision does not forbid the lawmaking body from passing an ordinance having a general object, and it may bring within its scope any number of sub-subjects germane to the general subject. Whatever is legitimately connected with a unified subject may be embraced in a single title or act;"

and that the ordinance was valid.

The appellants cite *Weckler v. Chicago*, 61 Ill. 142; *People ex rel. Raymond v. Latham*, 203 Ill. 9, 67 N. E. 403, and *Arnold v. Cambridge*, 106 Mass. 352. In the *Weckler* case an ordinance was held invalid, in that it combined two distinct improvements which provided for widening an alley running north and south through a block, and for opening an alley running east and west through the same block to intersect with the alley running north and south. In the *Latham* case, a later case from Illinois, an ordinance was held invalid which provided for the laying of more than forty separate and disconnected sidewalks located on twenty-five different streets in the village of Willamette, and in diverse and widely separated parts of the village, aggregating about seven miles of cement sidewalk. It was held that the ordinance was in violation of the general law of the state which gave authority to villages to construct sidewalks. The court was considering the language of a special sidewalk statute. The case, however, in principle upholds the validity

of the ordinance under consideration. Speaking to the question of the power of the city to unite one general scheme of improvement in a single ordinance, the court said:

"It is true that a single ordinance, providing for paving one or more streets, or providing for a system or common scheme for laying sewers, service pipes or drains has been held by this court to be a valid and legal ordinance. Where, in such case, many streets and parts of streets have been embraced in the scheme of improvement adopted by the city, they have been all regarded as parts of the same improvement. But the cases, where this rule has been announced, and where such double improvements made by a single ordinance have been endorsed and approved, have arisen under other provisions of the law than the sidewalk act of 1875. Thus, in *City of Springfield v. Green*, 120 Ill. 269, 11 N. E. 261, it was held that an ordinance for the paving of several streets and alleys and parts of streets with the same materials, and in the same way, was not obnoxious to the objection that it embraced more than one improvement. The principle announced in *City of Springfield v. Green*, *supra*, was applied to a system of sewerage in *Drexel v. Town of Lake*, 127 Ill. 54, 20 N. E. 38, and *Village of Hinsdale v. Shannon*, 182 Ill. 312, 55 N. E. 327, and *Haley v. City of Alton*, 152 Ill. 113, 38 N. E. 750; and to a system of drains and sewers, as in *Walker v. People*, 170 Ill. 410, 48 N. E. 1010; and to sewer and water service pipes, as in *Palmer v. City of Danville*, 154 Ill. 156, 38 N. E. 1067; and to a main sewer with lateral branches, as in *Payne v. Village of South Springfield*, 101 Ill. 285, 44 N. E. 105. In all such cases, a special benefit is supposed to be conferred upon the property taxed, and in theory, at least, there is supposed to be a common benefit flowing from the improvement as a whole."

In the *Arnold* case, it was held that a sidewalk statute did not confer the power upon the city to include sidewalks in two different streets in a single assessment.

The appellants argue further that an inspection of the map makes it apparent "that the inclusion of several of these streets was of no benefit whatever to appellants' property." As we have seen, their property is unplatted, and South Shilsholè Place as projected extends through it from

east to west. The same objection could be made to the open-
ing of a new street of a considerable length. Something
must be left to the good judgment of the commissioners. The
absence of benefit in the case at bar cannot be declared as a
matter of law. As was said in the *Latham* case, in all such
cases a special benefit is supposed to be conferred upon the
property taxed, and in theory there is supposed to be a com-
mon benefit flowing from the improvement as a whole.

The record discloses that, in addition to the amount of the
awards given for the several parcels of land, there was in-
cluded in the assessment the costs of the corporation counsel
in preparing and serving the petition in the condemnation
suit, the costs paid expert witnesses, and other costs of the
trial, the amount paid the city engineer for making the sur-
veys and platting the same, the fees of the eminent domain
commissioners, the estimated costs of the city treasurer in
collecting the assessments, and the estimated interest on the
awards. It is claimed that these items of expense cannot be
assessed against the property benefited by the improvement.
Section 20, Laws of 1907, page 323 (Rem. & Bal. Code,
§ 7787), provides:

"Such city may file in the same proceeding a supple-
mentary petition, praying the court that an assessment be
made for the purpose of raising an amount necessary to pay
the compensation and damages which may or shall have been
awarded for the property taken or damaged, with costs of
the proceedings, or for such part thereof as the ordinance
shall provide. The said court shall thereupon appoint three
competent persons as commissioners to make such assessment,
or if there be a board of eminent domain commissioners of
such city, appointed under the provisions of this act, said
proceeding for assessment shall be referred to said board.
Said commissioners shall include in such assessment the com-
pensation and damages which may or shall have been awarded
for the property taken or damaged, with all costs and ex-
penses of the proceedings incurred to the time of their ap-
pointment, or to the time when said proceeding was referred
to them, together with the probable further costs and ex-

penses of the proceedings, including therein the estimated costs of making and collecting such assessment."

The section quoted discloses a two-fold purpose; first, to assess the property for the purpose of paying the aggregate amount awarded to the owners of the property; the interest follows as an incident to the award; and second, to include in the assessment "all costs and expenses of the *proceedings* incurred, to the time when said *proceeding* was referred to them, together with the probable further costs and expenses of the *proceedings*." The change from the singular to the plural number, and the use of the words "all costs and expenses of the proceedings," clearly indicate an intention to make the property benefited carry the entire burden of the improvement. The appellants have cited in support of their view, *Chicago v. Cook*, 105 Ill. App. 353. The Illinois statute empowers the commissioners to include the "costs" of the assessment, as contradistinguished from our statute which includes "costs and expenses." The case is therefore not in point.

The appellants were awarded $2,850 in the condemnation proceedings, and their property was assessed for $1,296 by the commissioners. One of the commissioners testified on cross-examination that he was not an engineer, but that he would "judge from the looks of the land" that a reasonable grade of the street would require a cut. The corporation counsel thereupon stated that, in the hearing of the condemnation proceeding, "it was understood that a reasonable grade should be put through," and that the court allowed that question to go to the jury. Counsel for the appellants then stated: "If that is the case, I think I have a right to show what the effect of the grade would be upon the property." The court then ruled that he was not going into the question of grades, and that the "question is, will the property be benefited by this highway, the mere extension of the street across the tract." This ruling is assigned as error. We think the assignment has merit. The ordinance

did not establish the grade of the street. The appellants had a right to inquire whether the commissioners had considered the physical features of their land, and whether a reasonable grade, which it may be assumed will be made, had been considered by them in assessing benefits. It is obvious that the benefits to them may be materially affected by the presence or absence of a cut through their property. The appellants had a right to inquire as to this matter, and the order confirming the assessment without permitting it was error. *Ettor v. Tacoma,* 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061, has reference to platted streets. There is no merit in the other points raised.

The judgment is reversed, with directions to permit the appellants to inquire whether the matter of a reasonable grade through their property was considered by the commissioners, and what effect, if any, it will have upon the benefits to the property.

RUDKIN, C. J., FULLERTON, and MOUNT, JJ., concur.

PARKER, J. (concurring)—I reluctantly yield my assent to the views of the majority, to the effect that these five separate pieces of property, lying separated at such a distance from each other as they are, will, when acquired by the city, all become a part of a single homogeneous local improvement, such as the spirit of the law contemplates it shall be, to support a local assessment. It clearly never was intended, and the authorities cited by the majority so indicate, that widely separated improvements could be united and called one improvement, for the purpose of local assessment, unless they clearly formed one improvement. Each part of a local improvement must have some relation to every other part, and the proximity of the parts is a very important matter to be considered in determining such relation. This does not necessarily mean that all parts shall be physically contiguous; but they must all clearly be a part of one scheme or plan, which when completed can be said to

be a single improvement. I conceive the correct rule to be, that the improvement must be such that the benefits forming the basis for the assessment flow from the *whole improvement*, not merely from some part of it, to each of the properties sought to be charged with the expense of its creation, and when any substantial part of the improvement does not have this effect, the spirit of the law is violated. This is in harmony with *New Whatcom v. Bellingham Bay Imp. Co.,* 9 Wash. 639, 38 Pac. 163, though the principle is not very elaborately discussed in that case. I think the city, in this case, has gone to the very limit permitted by law, in its uniting of such widely separated parts to constitute a local improvement. With these observations I yield concurrence with the majority upon this question.

I dissent from the view of the majority which seems to assume that appellants are precluded from raising the question above discussed, since they did not raise it upon the hearing of necessity in the condemnation proceeding. The question of assessment was in no way involved at that hearing. The principles I have discussed above would have no bearing upon the city's right to condemn. If appellants were parties to that proceeding, it was not for the purpose of hearing any question touching the assessment of their property. Indeed, the statute expressly provides for the process and procedure by which jurisdiction over the property owner is to be acquired to adjudicate the assessment. While the two proceedings are under the one title, they are as separate and distinct as can be, so far as acquiring jurisdiction over the parties and hearing of the questions involved is concerned. One is a pure eminent domain proceeding, while the other is a local assessment proceeding, each based upon separate pleadings and separate process.

I concur in the result.