[Nos. 11588, 11589. Department One. November 16, 1914.]

THE CITY OF SPOKANE, *Respondent*, v. A. A. KRAFT *et al.,*
*Appellants.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS — ASSESSMENTS — ARBITRARY AND UNEQUAL ASSESSMENTS—REVIEW. An assessment is so excessive on its face as to show that it was arbitrary and disproportionate to benefits of the owners of property taken, where the lots of such owners were assessed at a greater sum than their award of damages for property taken, while property of others across the street having the same frontage was assessed only ten or twelve per cent as much, and this after the supreme court had already set aside a practically similar assessment and ordered a reassessment on account of the arbitrary and unequal nature of the assessment on the same lots.

SAME—REASSESSMENTS—COSTS—INTEREST. Where an award for property taken for opening and improving a street, equalled or ex-

[1]Reported in 144 Pac. 286.

ceeded the assessment for benefits, and was not paid, and after appeal to the supreme court, a reassessment was ordered reducing the assessment for benefits, the reassessment cannot, under Rem. & Bal. Code, § 7787, authorizing the inclusion of all costs and expenses and interest, include supreme court costs and interest on the assessment, since the award was presently due on the termination of the condemnation suit, which was a proceeding distinct from the assessment for benefits, and the city had not incurred any obligation on which interest had accrued or was running.

SAME—REVIEW—DECISION—REMAND. Upon reversing for the second time on appeal the confirmation of an assessment for improvements on the ground that one block was arbitrarily assessed an excessive amount, the supreme court will, if there is enough in the record to warrant it, order an arbitrary reduction of the assessments and order the roll confirmed.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered June 28, 1913, upon findings in favor of the plaintiff, confirming an assessment roll for street improvements. Modified.

*Post, Avery & Higgins,* for appellants.

*H. M. Stephens, Wm. E. Richardson, Ernest E. Sargeant,* and *Dale D. Drain,* for respondent.

CHADWICK, J.—This case has been before this court, and was sent back for reassessment. *Spokane v. Kraft,* 67 Wash. 245, 121 Pac. 830. We held that the assessment district first defined did not include all of the benefited property, and the city was directed to extend its boundaries so that there might not be unreasonable discrimination in favor of, or against, any particular property or the owner thereof. The court also said, in the former opinion, that the remarks of the court with reference to the arbitrary fixation of the boundaries of the assessment district applied to the unequal apportioning of the assessment by reason of the excessive charge against block 10, as compared with other blocks.

The case comes to us upon two assessments, one known as the First avenue assessment district, and the other, the Sheridan street assessment district. To illustrate our argu-

ment, we have prepared plats showing appellants' property and its relation to other property similarly affected.

The heavy lines mark the boundaries of the districts. The figures shown on the plats are the sums assessed against the several lots. The amounts shown may not be exact, but it was agreed upon oral argument that they are approximately correct.

First Avenue
Assessment.

Sheridan Street
Assessment

Referring first to the First avenue assessment, the property affected is the north half of block 10, and was assessed in the amounts shown on the plat. For instance, lots 7, 8

and 9, in block 10, are assessed for $517.15 each, while corresponding lots immediately across the street are assessed for approximately $73 each. It is true that the lots in block 3 extend through to Sprague avenue, an improved street, and that they are less in area than the lots in block 10, but the assessment laid by the board upon the lots in block 10 seems entirely disproportionate to the relative benefits. It cannot be said that First avenue was open to the owners of the lots in block 3, and not open to the appellants, for, although the line of the appellants' property on First avenue was irregular, they nevertheless had the same access to that part of First avenue which was open, as did the owners of the property in block 3. The legal effect of the proceeding was to widen First avenue, and it seems to have been the purpose of the commissioners to put the cost of widening this avenue upon the appellants to the very last cent that in their judgment the law would allow.

Referring now to the Sheridan street assessment, we find the property, the west half of block 10, assessed for $1,732.20; the lots in block 3 assessed for $81.70, and those in block 15 for $288.70; while a comparison of the levy upon lots 1, 2 and 3 in block 10, with lots 4, 5 and 6 in block 15, each having the same frontage on Pacific avenue, shows a discrimination even more marked. It seems to us that, after a display of these figures, an argument is not necessary to show that the assessment was arbitrary and disproportionate to benefits realized by the owners of the property taken for street purposes.

The amount awarded in the condemnation proceedings to the appellants for the property taken, was $4,649.70; the assessment for benefits is $4,837.20.

It may be that the city has complied with the letter of our former opinion, but it does seem that it has violated its spirit and has overlooked the force of that part of the opinion which refers to the inequality of the assessment. The figures indicate a purpose to maintain the intent of the former assess-

ment to make the property owner bear an award in con-
demnation proceedings by charging it back in the way of an
assessment for benefits, an intent which in all of these pro-
ceedings has been but ill concealed.

In some of our cases where there was no question of rela-
tive benefit, the court has said that a property owner could
not complain of the amount of the assessment, provided it
did not exceed the benefits. In those cases the questions of
relative value seem not to have been raised. It has never
been our purpose to hold, for it is not the law, that a prop-
erty owner can be compelled to give his property for a public
use without compensation; or, in meeting a burden common
to the public, pay more than his relative share. The ques-
tion here is, not whether the particular property is benefited,
but whether all property relatively benefited bears its equable
and equitable proportion of the costs of the property or im-
provement. The case of *In re Eighth Avenue Northwest*, 77
Wash. 570, 138 Pac. 10, is in point. In that case, we said
that the principle which underlies all assessments is "the
principle which requires assessments for the public benefit to
be distributed with substantial equality over all property of
like kind and similarly situated with reference to the subject-
matter of the assessment." This is not only a general rule,
but it is also provided by ordinance No. A-4563 of the city
of Spokane, that the cost "shall be assessed upon all of said
property so benefited in proportion to the relative benefits re-
ceived by said lots."

Without reviewing the testimony of the witnesses who testi-
fied as to the unfairness of the assessment, we are of opinion
that the assessments laid upon the property of appellants are
disproportionate when the benefit to other property within
the district is taken into consideration. *In re Ninth Avenue
West*, 76 Wash. 401, 136 Pac. 488.

But it is insisted that we have held, without qualification
and steadfastly, that this court will not disturb an assessment
unless it appears that it was made in fraud of the right of a

property owner, or that it was arbitrary, or captious, or that the assessment was made upon a fundamentally wrong basis, and that there is no evidence in this case that this was so.

It occurs to us that the record is pregnant with the *indicia* of an arbitrary purpose to lay a heavy hand upon appellants and to compel them, by a process of litigation and bookkeeping, to practically donate the property taken from them for street purposes.

No better evidence could be offered than the fact that the eminent domain commissioners disregarded the relative situation and benefit to other property. While it may be admitted that the lots in block 3, for instance, are not benefited in the same degree as are the lots in block 10, yet there is nothing in the record, in fact, all of the oral testimony is either a qualified admission, or is to the effect, that an assessment of the lots in block 3 of approximately ten or twelve per cent of the amount of assessment upon the lots in block 10 is unreasonable. While the temptation to put the burden of payment upon the property owner in such cases may be strong, yet the law is such that the board should disregard entirely the source from whence the property comes, and treat the claimant in a condemnation suit when his day for assessment comes as it would one whose property had not been taken, and assess benefits, if any, accordingly.

In making up the new assessment roll, the city included the following items of cost:

|  | First Avenue | Sheridan Street |
|---|---|---|
| Interest | $677.45 | $1,146.15 |
| Supreme Court Costs | 69.25 | 69.25 |
| Printing Notices | 6.00 | 6.00 |
| Posting Notices | 1.50 | 1.50 |
| Publishing Notices | 6.00 | 6.00 |
| Mailing Notices | 14.60 | 3.80 |
| Names of Owners | 3.40 | .70 |
| Collecting Roll | 17.75 | 6.15 |
| Engineer's Expenses | 34.95 | 50.00 |
| Commissioners' Per Diem | 125.00 | 110.00 |
| Total | $1,424.60 | $930.85 |

Upon the hearing below, the court denied the item "supreme court costs," and taxed all of the other items against the appellants. The money to pay the condemnation judgment was taken out of the general fund, under the statute which permits this to be done. Rem. & Bal. Code, § 7817 (P. C. 171 § 129). When paid, it was the property of the claimants in the condemnation suit. They had a right to receive their award, and it then became the duty of the city to assess this amount against the benefited property. If it has not done so because of its own neglect to observe a proper procedure, it would seem that it would be manifestly unfair to charge the property owner with interest. It would be, in effect, treating the condemnation award as a loan with interest, until the city could levy an assessment which would take back or effect a compulsory payment of its involuntary loan. It is true that we have said that interest accrued and costs incurred may be included upon a reassessment. *Van Der Creek v. Spokane*, 78 Wash. 94, 138 Pac. 560. Such holding would be proper in all cases where it is made to appear that the award had not been paid or bonds or warrants had been issued in payment for the work done and interest was running against the city. A condemnation proceeding and an assessment for benefits accruing from the opening of a street, are distinct, and will ordinarily be treated as having no relation to each other. *In re Third, Fourth & Fifth Avenues*, 49 Wash. 109, 94 Pac. 1075, 95 Pac. 862.

We have not here a situation where the city had incurred an obligation, either on its own behalf or on behalf of an assessment district, upon which interest had accrued or was running, and for that reason the cases cited are not in point.

In *In re South Shilshole Place*, 61 Wash. 246, 112 Pac. 228, the court construed the statute, Rem. & Bal. Code, § 7787 (P. C. 171 § 69), saying the use of the words "all costs and expenses of the proceedings clearly indicate an intention to make the property benefited carry the entire burden of the improvement." The same holding was made

in *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279, and in *In re Jackson Street*, 62 Wash. 432, 113 Pac. 1112. This reasoning, carried to its logical sequence, compels the holding that the costs of a reassessment are "costs and expenses of the proceedings." If it were not for our statute, this holding would probably be against the weight of authority, but it is compelled by the necessity of cases of this kind and the construction put upon the statute by this court when providing for the costs and expenses of the original condemnation proceeding. It must be borne in mind that the statute provides for reassessments, and when all of its various sections are considered, we cannot escape the conclusion that the costs of a reassessment must be laid against the property benefited.

Taking the case by its four corners, and having considered the evidence of the witnesses, we have come to the conclusion that there is enough in this record, the case having been here twice, to warrant us in ordering an arbitrary reduction in the amounts assessed against appellants' property, and we have decided to direct that, after deducting interest and supreme court costs, there be deducted from the amount assessed, a sum equal to forty per cent of the remainder, and that the roll be then confirmed. It is so ordered.

CROW, C. J., and GOSE, J., concur.