[Nos. 10324, 10306-10316.   Department One.   August 16, 1912.]

## G. W. HAPGOOD et al., Appellants, v. THE CITY OF SEATTLE, Respondent.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS—LIMITATIONS—STATUTES—CONSTRUCTION. Under Rem. & Bal. Code, § 7571, which provides that it shall be lawful for a city of the first class to order any improvements the cost of which is to be charged to abutting property when said cost shall not exceed fifty per cent of the valuation of the real estate in the improvement district, a property owner cannot complain of an improvement the cost of which exceeds fifty per cent of such valuation, where no more than such fifty per cent is assessed against the benefited property and the balance is provided by the city from its general fund or other sources.

[1]Reported in 125 Pac. 965.

SAME—LIMITATION—IMPROVEMENT DISTRICT. Rem. & Bal. Code, § 7571, limiting assessments for local improvements to fifty per cent of the valuation of the real estate within the improvement district, does not limit each assessment to fifty per cent of the value of each lot assessed, nor the total assessment to fifty per cent of the value of all the lots assessed; but the limit of the assessable cost is fixed by the total valuation of the real estate within the entire district, even if some of the property therein is not benefited and not subject to assessment.

SAME—REASSESSMENT—PROPERTY LIABLE. The fact that property has been assessed for an improvement, does not prevent a reassessment for an additional charge to make up a deficit arising when part of the assessments were held invalid, such reassessment being expressly authorized by Rem. & Bal. Code, § 7893, to the extent of the benefit which the property received from the improvements.

SAME—REASSESSMENT—INVALIDITY OF ORIGINAL ASSESSMENT. Under Rem. & Bal. Code, § 7894, providing for reassessments where the invalidity of the original assessment is established "either directly or by virtue of any decision of the courts," a reassessment is *prima facie* authorized where a portion of the lots, found by the jury to be damaged, were adjudged nonassessable for that reason, and the city council by resolution cancelled the same and other like assessments for the same reason.

SAME—REASSESSMENTS—PROPERTY DAMAGED. Where assessments were adjudged illegal for the reason that the property was found by the jury to be damaged and was therefore nonassessable, such property cannot be subjected to a reassessment, although it may in fact have been benefited, the former adjudication being final.

Appeals from judgments of the superior court for King county, Myers, J., entered January 10, 1912, confirming an assessment, upon appeals from the city council. Affirmed.

*Ballinger, Battle, Hulbert & Shorts, Wm. Hickman Moore, Edwin C. Ewing, McClure & McClure, Brady & Rummens, Peters & Powell, Byers & Byers, Wm. Martin,* and *W. A. Keene,* for appellants.

*James E. Bradford, William B. Allison, Leander T. Turner,* and *Preston & Thorgrimson,* for respondent.

PARKER, J.—These are appeals from judgments of the superior court for King county, affirming the action of the city council of Seattle in making and confirming a supple-

mental assessment against property of appellants for the cost of a local street improvement. The same contentions are made by appellants in each case, in this court, so our discussion and conclusions will apply alike to all.

In December, 1905, the city council of Seattle passed Ordinance No. 13,102 providing for the change of grades of Jackson and other streets in the city, providing for the institution of condemnation proceedings to acquire and damage property rights as against the owners of abutting property necessary to the making of such change of grades, and providing for the levying of special assessments by eminent domain commissioners against property benefited by such change of grades to pay the damages awarded in such proceedings, as authorized by the eminent domain law applicable to cities. While this ordinance did not make provision for the construction of the physical improvement, it manifestly contemplated the making of such improvement upon acquiring the right to damage abutting property by the change of the grades. Thereafter in February, 1906, the city council passed Ordinance No. 13,309, providing for the improvement of Jackson and other streets by the change of the grades thereof, as contemplated by the condemnation Ordinance No. 13,102, creating a local improvement district and providing for the payment of the cost of the improvement by special assessment against the property of the district benefited thereby; such assessment to be levied by the city council in pursuance of statute, charter, and ordinance provisions applicable to local improvement assessments in the city. A contract for the construction of the improvement having been entered into by the city, an assessment was accordingly levied against the property in the district by the city, which was confirmed by Ordinance No. 17,126, in October, 1907. Thereafter in August, 1910, the city council passed Ordinance No. 24,827 cancelling of record assessments charged against certain of the property within the district, reciting and providing in that ordinance as follows:

"Whereas, under Ordinance No. 13,309 of the city of Seattle, creating local improvement district No. 1,213 there was improved Jackson street and certain parts of certain other streets and avenues; and

"Whereas, said ordinance authorizing said improvement required that all property abutting adjacent or proximate to said portion of said streets and avenues, named and described in section one thereof, to such distance back from the marginal lines thereof as prescribed by the city charter, should be deemed to be property specially benefited by said improvement, and that the total cost and expense of such improvement should be defrayed by the collection of special assessments against such property; and

"Whereas, certain tracts, pieces and parcels of land within the limits of said district, as created by said ordinance, were by the jury impanelled for the ascertainment of damages in the condemnation proceedings had for the establishment of the regrade elevations in said local improvement district, found to be damaged by reason of said regrade; and . . . .

"Whereas, under certain decisions of the supreme court of the state of Washington, certain assessments in said local improvement district are null and void either in whole or in part; now, therefore, be it ordained by the city of Seattle as follows:

"Section 1.    That the assessments levied against the lots, parcels, pieces and tracts of land hereinafter in this section enumerated, for the improvement of Jackson street, and certain parts of certain other streets and avenues, all in the city of Seattle, under Ordinance No. 13,309, creating local improvement district No. 1,213, be, and the same hereby are, cancelled and annulled, to wit: . . . ."

It is manifest from the record that the passage of this ordinance was prompted by the result of certain litigation prosecuted by owners of certain property charged by the original assessment with a portion of the cost of the improvement, culminating in the decisions of this court in the cases of *Schuchard v. Seattle*, 51 Wash. 41, 97 Pac. 1106, and *Seattle & Puget Sound Packing Co. v. Seattle*, 51 Wash. 49, 97 Pac. 1093, where it was held that property which is found by the jury in a condemnation proceeding to be damaged is not chargeable by assessment with any of the cost of the

improvement contemplated by such condemnation proceeding. Under these decisions, the assessments thus cancelled of record by this ordinance were invalid and unenforcible. It is also apparent from the record that the passage of this ordinance was intended as a preliminary step to the making of a reassessment, by "supplemental assessment" as the city called it, under the authority of the reassessment law, and the reassessment provisions of the city charter, which are in substance the same. Rem. & Bal. Code, § 7893 and following; City Charter, art. 8, § 18.

Thereafter, in December, 1910, the city council passed Ordinance No. 25,840 providing for a supplemental assessment against the benefited property within the district, to make up the deficiency caused by the invalidity of the assessments cancelled of record by Ordinance No. 24,827. An assessment roll was made up accordingly, omitting therefrom all charges against property which had been found to be damaged in the condemnation proceeding and against which the invalid cancelled assessments had been levied by the original assessment, and charging the deficiency caused thereby against other property in the district, including the property of these appellants which had already been assessed by the original assessment. Notice of hearing upon this supplemental assessment was given as the law directs, when these appellants filed their objections thereto, which were by the council overruled and the supplemental assessment roll confirmed in May, 1911, by Ordinance No. 27,259. Appeals were taken by the objectors, to the superior court, from that confirmation; and the decision of that court being adverse to them, they have appealed to this court. The original assessment, in so far as it was valid, was not disturbed or changed by the supplemental assessment; but the supplemental assessment was made in addition thereto. This seems to account for the city giving the new assessment that name rather than the name of "reassessment," as it is called in the law and charter provisions under which it was made. This, however, does not

change its legal effect, as we will presently see. Other facts will be noticed as may be found necessary in our discussion of the several contentions of appellants.

It is first contended by counsel for appellants that the supplemental assessment was erroneously made and confirmed because it resulted in the total of the original and supplemental assessment exceeding fifty per cent of the assessed value of the real estate, exclusive of improvements, within the improvement district, in violation of the limitation prescribed by Rem. & Bal. Code, § 7571, as follows:

"It shall be lawful for any city of the first class to order any improvement, the cost of which is to be charged to abutting property, when said cost shall not exceed fifty per cent of the valuation of the real estate exclusive of improvements within the proposed improvement district according to the valuation last placed upon it for purposes of general taxation."

The city charter permits this limit to be exceeded under certain conditions; but we are not concerned with them here. The original estimated cost of the improvement was $450,000. Fifty per cent of the total assessed value of the real estate within the district, as then defined by Ordinance No. 13,309, was $452,000; and the total actual cost of the improvement, exclusive of interest, ultimately proved to be $439,718; so it is apparent that both the estimated cost of the improvement and the ultimate actual cost of the improvement was less than fifty per cent of the assessed value of all the real estate within the district. The total amount charged against the property within the district by the original assessment was considerably in excess of fifty per cent of the assessed value of the real estate in the district. This evidently was the result of the accumulation of interest prior to the making of the assessment. However, the total amount assessed upon the original roll, against property in the district which was liable to assessment because of being benefited, was $318,587, and the total amount of the supplemental assessment charged against benefited property in the district was $61,409, mak-

ing the total amount of the assessment, both original and supplemental, against property liable to assessment because of being benefited $379,996; which, it will be noticed, is less than fifty per cent of the assessed value of all of the real estate in the district, less than the original estimated cost of the improvement, and less than the actual cost of the improvement. The difference between this sum and the actual cost of the improvement was made up partly by the city from its general funds; partly from assessments made upon property which had been damaged, and hence not assessable, by consent of the owners thereof; and partly by payments voluntarily made upon invalid assessments. It is apparent from the statute and charter provisions, above quoted, relating to the fifty per cent limit of assessment, that we are not here concerned simply with the question of how much the total cost of the improvement was; but, so far as the rights of the owners of property in the district are concerned, the question here is, What was the cost of the improvement in so far as that cost became chargeable as a lien by special assessment against the property within the district? If the city should undertake an improvement of an estimated cost of twice the fifty per cent limit of assessment upon property of the district, and should provide for payment of one-half or more of the cost of the improvement otherwise than by such special assessment, leaving only such portion of the cost to be assessed against property within the district as would be within the fifty per cent limit, we think that the owners of such property could not successfully maintain an objection to the assessment because of the cost of the improvement being beyond the fifty per cent limit; because the cost to them would not exceed that limit, and that, in our opinion, is the measure of the cost of the improvement so far as their rights are concerned. So in this case, we may exclude from consideration all sums having to do with the entire cost of the improvement except the total amount of the original assessment made upon property legally chargeable therewith and

the total amount of the supplemental assessment. If the total from these two sources does not exceed the fifty per cent limit, we are not able to see by what legal right complaint may be made upon this ground.

The question arises, What is the district for the purpose of determining the total assessed value of the real estate therein? Is it all of the real estate within the physical outer boundaries of the defined district, or is it only real estate within such boundaries, which may ultimately be legally assessed to pay the cost of the improvement? Learned counsel for appellants apparently contend that it is only the latter; and that this view would result in the total of the valid assessments in this case exceeding fifty per cent of the assessed value of the particular property so assessed. It seems to us that this view, in its final analysis, amounts simply to the contention that no particular lot or tract can be charged by the special assessment with more than fifty per cent of its assessed value. Now the district must be created and defined before making the improvement. At that time it is not known to what extent each particular tract in the district will be benefited. It is not known but that some of the tracts may not be benefited at all while others may be benefited even in excess of their entire assessed value. Manifestly these statutes and charter provisions do not constitute a limitation upon the amount which each tract may be charged by special assessment; but, like a general debt limit prescribed by constitution or statute against a municipality, refer to the total debt which may be incurred as compared with the total assessed value of the property in the entire district. It is simply a measure of the amount of the entire debt which may be incurred, and is not a measure of how much each particular tract or class of tracts may be charged in raising funds to pay such debt. This is the theory upon which this court decided the case of *Ferry v. Tacoma*, 34 Wash. 652, 76 Pac. 277, where there was in-

volved the language of the city charter of Tacoma, reading as follows:

"No improvement shall be made when the estimated cost thereof shall exceed fifty per cent of the assessed value of the property to be assessed."

This language, it will be noticed, comes nearer confining the district to the property that is ultimately actually assessed, and comes nearer limiting the assessment to fifty per cent of the assessed value of each particular tract, than does the language of the statute and other charter provisions here involved. It follows that the limit of the assessable cost of this improvement is fixed by the total assessed valuation of the real estate exclusive of improvement within the boundaries of the entire district, even though it be found in the making of the assessment that some of the property within the district cannot be assessed because it is not benefited, as occurred in this case. Applying this measure, we find that the total of these valid assessments, both original and supplemental, is well within the fifty per cent limit prescribed by the statute and charter applicable thereto. Of course the limit of actual benefit to each tract is paramount to all other limitations; but that is another question.

Some contention is made against the charging of the supplemental assessments against the property of these appellants because their property had already been charged for the improvement upon the original assessment roll. It seems clear, however, from the statute that the only valid objection to such additional charge made by supplemental assessment would be that such charge was not based upon proportional benefits; for except as restricted by law, Rem. & Bal. Code, § 7893, after authorizing reassessments, provides:

"And it is further provided, that whenever, for any cause, mistake or inadvertence the amount assessed shall not be sufficient to pay the cost of the improvement made and enjoyed by owners of property in the local assessment district where the same is made, that it shall be lawful and the city council or other authorized board or body is hereby directed and au-

thorized to make reassessments on all the property in said local assessment district sufficient to pay for such improvement."

Subdivision 10, § 18, art. 8, of the city charter is in substance the same. Clearly this authorizes such an additional charge, limited only by the benefit which the property has received from the improvements to be equitably apportioned. *State ex rel. Barber Asphalt Paving Co. v. Seattle,* 42 Wash. 370, 85 Pac. 11.

As we understand counsel for appellants, they also make some contention that the invalidity of the assessments which were cancelled by the city council has not been sufficiently shown to warrant a reassessment or supplemental assessment to make up the deficiency caused thereby. It is plain, however, from the record that such assessments were cancelled of record by the council because they were levied upon property which had been found to be damaged by the improvement in the condemnation proceedings. It is true that it does not appear that the litigation leading up to the decisions rendered by this court, above mentioned, wherein it is held that such property could not be assessed, directly involved each and all of the assessments so cancelled. But it is shown, at least *prima facie*—and appellants offered no showing to the contrary—that at least some of those assessments were directly involved in that litigation, and the result of that litigation established indirectly the illegality of all others of those assessments. It is not necessary that each particular assessment be directly adjudged invalid in an action wherein such assessment is called in question. The language of the reassessment law, Rem. & Bal. Code, § 7894, shows that it is sufficient for the purposes of a reassessment that the invalidity of the original assessment be established "either directly or by virtue of any decision" of the courts. It is not so much a question of whether or not an assessment has been actually adjudged invalid, but whether or not it is in fact invalid. Any decision that so shows is sufficient to support a

reassessment. *State ex rel. Hemen v. Ballard,* 16 Wash. 418, 47 Pac. 970; *Tumwater v. Pix,* 18 Wash. 153, 51 Pac. 353; *Port Angeles v. Lauridsen,* 26 Wash. 153, 66 Pac. 403; *Young v. Tacoma,* 31 Wash. 153, 71 Pac. 742; *Johnson v. Seattle,* 53 Wash. 564, 102 Pac. 448.

It is further contended that the supplemental assessment was erroneously made and confirmed because all of the benefited property within the district was not charged with the assessment. This contention seems to be rested upon the assumption that the property which had been found in the condemnation proceeding to be damaged should have been assessed for the improvement because it was in fact benefited thereby; and evidence was offered in behalf of appellants to so show. While the court received some evidence so indicating, such evidence was apparently ignored by the court. In this it was clearly right, because the fact that such property was not benefited by the improvement was rendered final by the determination in the condemnation proceeding that it was damaged thereby. This is the theory upon which our decisions were rested in *Schuchard v. Seattle,* and *Seattle & Puget Sound Packing Co. v. Seattle, supra.*

It is finally contended that the evidence offered upon the trial shows that the supplemental assessments were not made according to benefits nor equitably apportioned upon the property charged. We have carefully read the evidence bearing upon this question, and deem it sufficient to say that we find nothing therein that would warrant our interference with the decisions of the council and the trial court upon that subject. There may be some room for difference of opinion as to the apportionment of the assessment and as to the amount of benefits conferred upon the several tracts; but we cannot say that any more serious question is presented by the evidence. This does not call for interference by us. Some other questions are raised in the brief of counsel for appellants; but whatever our views relative thereto might be, they would not call for a reversal of the trial court.

We conclude that the judgment must be affirmed. It is so ordered.

CROW and GOSE, JJ., concur.