[No. 11591. Department One. February 11, 1914.]

## A. VAN DER CREEK et al., *Respondents*, v. THE CITY OF SPOKANE, *Appellant*.[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — ASSESSMENTS—REASSESSMENTS — OBJECTIONS — WAIVER.  Under 3 Rem. & Bal. Code, §§ 7892-42, 7892-43, authorizing a reassessment only when the first has failed to be valid, the reassessment is to be made *de novo;* hence parties who failed to protest against the original assessment, which exceeded the limit fixed by law at fifty per cent of the valuation of the property, are not, for that reason, precluded from objecting to the reassessment when it also exceeds such limit.

SAME—ASSESSMENTS—LIMITATIONS—REASSESSMENTS.  3 Rem. & Bal. Code, § 7892-12, providing that a city of the first class cannot assess abutting property for an improvement in excess of fifty per cent of the valuation of the property as shown on the tax rolls, without the sanction of the owners, is a limitation on the power of the city, and extends to reassessments as well as to an original assessment.

SAME—OBJECTIONS—FORM — WAIVER — DIRECT OR COLLATERAL ATTACK.  3 Rem. & Bal. Code, §§ 7892-21, 7892-23, providing that all objections to assessment proceedings shall state clearly the grounds, and shall be deemed waived if not taken in the time prescribed, and that confirmation of the assessment roll shall be conclusive in all things upon all parties not filing written objections within the time provided, and not appealing from the confirmation, apply to independent proceedings and not to objections made in the proceeding itself, and are intended to save assessments from collateral attack, leaving the owner the right to raise any objection upon direct attack in a reassessment made *de novo.*

SAME—ASSESSMENTS—REASSESSMENTS —LIMITATIONS — INTEREST.  Upon setting aside an assessment in excess of the limitation to fifty per cent of the valuation of the property benefited, the council may make a reassessment to the extent of said limit, with accrued interest added; since the law intends that all assessments shall draw interest.

[1]Reported in 138 Pac. 560.

SAME—ASSESSMENTS—DISTRICTS. In affirming the reduction of an assessment for municipal improvements, the supreme court has no power to authorize the city to enlarge the district in order to bring in enough other property to pay the cost of the improvement.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 2, 1913, upon findings in favor of protestants, setting aside a reassessment roll, upon appeal from the order of the city council confirming the roll. Affirmed.

*H. M. Stephens, Wm. E. Richardson, Ernest E. Sargeant, Dale D. Drain (F. D. Allen,* of counsel), for appellant.

*Starkey & Belknap* and *Morrill, Chester & Skuse,* for respondents.

CHADWICK, J.—The city of Spokane passed an ordinance providing for the improvement of Northwest Boulevard, and creating an assessment district. The value of the abutting property, according to the valuation last placed upon it for the purposes of general taxation, was $58,493, and its assessable value under the special assessment law, Laws of 1911, p. 445, § 12 (3 Rem. & Bal. Code, § 7892-12), was $29,-246.50. An estimate of the cost was made at $129,000. A contract was let to do the work for $121,000, and the cost, as finally settled for the purpose of assessing the cost to the abutting property, was fixed at $135,200.50. A roll was made up and brought on for confirmation. Certain property owners objected, but the roll was confirmed over their protest. Upon appeal to the superior court, the assessment was set aside and a reassessment ordinance was passed. Objections were made by those formerly objecting, and others who had made no objection to the original roll. The reassessment roll was confirmed. On appeal, the reassessment roll was again set aside. The city has appealed, and submits several questions for answer.

"First: May property owners who did not file objections to the confirmation of the first assessment roll upon the

ground that such assessment exceeds 50 per cent of the assessed valuation of the property in the district and who were not parties to any litigation affecting the first roll, file objections to the reassessment roll prepared in said case as a result of objections filed and an appeal taken by other property owners, and base those objections upon grounds which existed against the first assessment roll and which were the subject of controversy between the appealing property owners and the city on that roll?

"Second: Where an assessment has been declared invalid because it exceeds the 50 per cent of the assessed valuation of the statute, may the city re-assess the whole cost of such improvement against the property included in the original assessment district including that the owners of which protested and appealed from the first rolls?"

The answer to these questions is to be found in the statute. Laws of 1911, p. 441 (3 Rem. & Bal. Code, § 7892-1 *et seq.*). Prior to the enactment of this law, the only limitation fixed by general law upon the taxing power of the city in matters of this kind was that they should keep within the range of benefits, the amount of which was too often fixed arbitrarily and without right or reason and, being always determined at the discretion of the board of commissioners, could not, in the absence of a positive or constructive fraud, be reviewed by the courts. Clearly there was a mischief made possible by an existing law, and it was the manifest purpose of the act of 1911 to remedy this and to prevent a recurrence of existing abuses which had at times resulted in confiscation. To that end, a limitation was fixed beyond which the city could not go without the sanction of the owners of property within the affected area; the limit being fifty per cent of the value of the property as shown by the tax rolls.

There can be no question as to the invalidity of the original assessment. A reassessment is permitted under §§ 42 and 43 of the Laws of 1911, pp. 468, 469 (3 Rem. & Bal. Code, §§ 7892-42, 7892-43). We shall not set them forth in this opinion, for a most casual perusal will show that the statute contemplates an assessment *de novo*. A reassessment is au-

thorized only when the first assessment has "failed to be valid," and to leave no question open as to the meaning of the words quoted, the term "invalidity" has been defined a "want of form or insufficiency, informality or irregularity, or non-conformance with the provisions of law, charter or ordinance." In the case at bar, there was no pretense of conforming with the limitation fixed by law. The assessment was invalid within the letter of the statute. The new proceeding was undertaken as if no assessment had ever been made. The law does not undertake to define or limit the rights of protesting parties on reassessment, but does say in terms that the reassessment shall be made in accordance with the provisions of law and ordinance existing at the time the reassessment is made.

"This assessment [a reassessment] is not based on the other one, but has its foundation in the ordinance providing that the improvement should be made, and that it should be paid for by special assessment." *Farr v. West Chicago Park Com'rs*, 167 Ill. 355, 46 N. E. 893.

We held, when considering a like contention made under the act of 1907, that nonobjecting property owners were entitled to a proportionate benefit where the original assessment had been reduced by the court upon the appeal of others, reference being had to the underlying principles of the law. *Seattle v. Sylvester-Cowen Inv. Co.*, 55 Wash. 659, 104 Pac. 1121.

The argument is made that the only constitutional limitation upon the power of the city to levy a special assessment to pay for municipal improvements is that the tax shall not exceed the benefit. Const., art. 7, § 9. This was undoubtedly the rule, and it has been frequently declared by this court prior to the enactment of the act of 1911. By this later enactment, which is a general law, the limit of an assessment is fifty per cent of the valuation of the benefited property.

A general law governing cities and town and which limits the power granted, when passed in conformity with art. 11,

4—78 WASH.

§ 10 of the constitution, is, in so far as the subject-matter of the enactment is concerned and the municipality affected, a limitation of equal force and as imperative in its workings as if it were a part of the constitution itself. Franchises and contracts of cities must give way before such laws, for their potency is that of the constitution, while the act of a city is permissive only. The general law under which a city exercises its power is its constitution, in which it must be able to show authority for the acts which it assumes to perform. Cooley, Constitutional Limitations (6th ed.), 227; Dillon, Municipal Corporations (5th ed), 237, 587. This argument disposes of the cases of *Collins v. Ellensburg*, 68 Wash. 212, 122 Pac. 1010, and *Chandler v. Puyallup*, 70 Wash. 632, 127 Pac. 293, which are relied on to prove that the council had power, in the absence of objections, to assess or reassess without limit. In those cases the irregularities went to matters of procedure only and were properly held not to be jurisdictional. See, also, *Allen v. Bellingham*, 77 Wash. 469, 137 Pac. 1016. Here the invalidity touches a positive prohibition of the statute.

Under the cases cited, *Rucker v. Everett*, 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582; *Collins v. Ellensburg*, and *Chandler v. Puyallup, supra; Northwestern & Pac. Hypotheek Bank v. Spokane*, 18 Wash. 456, 51 Pac. 1070; *Anna Wright Seminary v. Tacoma*, 23 Wash. 109, 62 Pac. 444; *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279; appellant contends that a property owner who makes no protest is conclusively presumed to be satisfied with the assessment and will not be thereafter heard to question it. We have said enough to show that the power to tax up to fifty per cent of the assessed valuation is a limitation and not a grant of power; and these cases are inapplicable because of the reasons sustaining the *Collins* and *Chandler* cases, or because the proceedings were brought into question in a collateral proceeding.

The statute, § 12 of the act (3 Rem. & Bal. Code, § 7892-

12), has never been squarely passed on by this court, but it seems to have been assumed in *Hapgood v. Seattle,* 69 Wash. 497, 125 Pac. 965, and *Inner-Circle Property Co. v. Seattle,* 69 Wash. 508, 125 Pac. 970, that a city has no jurisdiction to assess beyond the limit of fifty per cent of the value of property as fixed for taxation purposes. In the *Hapgood* case, the premise was accepted as not debatable, but the court found the assessment there complained of to be within the fifty per cent limit, and upheld it. In the *Inner-Circle Property Co.* case the court said: "Of course the fifty per cent limit cannot be exceeded as against all the property within the district."

Many cases are cited, and an engaging argument is made by counsel, to prove that the test of the power to reassess is to be found in the answer to the question whether, in a given proceeding, the legislature could have dispensed with the thing omitted, or authorized that to be done which has been done in an irregular way. This proposition is fundamental (Page and Jones, Taxation by Assessment [2d ed.] p. 961), and has been so often decided by this court that it would be a work of supererogation to review the cases. Almost all of our reassessment cases rest upon this principle. In all of them there was a power granted by the legislature and a certain procedure defined. The legislative concern under former laws went more to the grant of power than to the limit of its exercise. That is to say, a city could not proceed to improve streets on the special assessment plan at all without a law authorizing it to do so. If it should have undertaken to do so, any court of equity would have restrained it; but the power being given, an informality in the notice or petition, or in making up the roll, or any curable error, has been held not to be jurisdictional. Yet this court and all others have not hesitated to set aside assessments when they manifestly have gone beyond the limit of benefit. To hold the present proceeding valid, would be to hold that the legislature cannot grant a part less than the whole; that it cannot limit the

power to take property in payment of a tax. Such a proposition is unheard of, and its reasoning would defeat itself; for if the people in their sovereignty cannot limit their grant in part, they could not withhold it at all, and a city could proceed without restraint to do that which the legislature has said cannot be done or can be done only in a limited way.

Our thought may be illustrated by reference to a few of the limitations put upon the power of a city council; as, for instance, to contract certain debts, or to issue bonds in excess of a certain amount unless sustained by a vote of the people; the limitation put upon the passage of an ordinance as to the number of councilmen voting for it, and as to the time within which it may be passed, if it pertains to certain subjects; by the limitation put upon the issuance of saloon licenses in that they shall not be granted to any one who has not complied with the general laws of the state and that they shall not be granted for more than one year; and by the general law that contracts shall not be made with a councilman of a city.

We have resorted to these simple illustrations because of the seeming sincerity of counsel in urging, as an apposite principle, that the city may do anything that the legislature might have authorized it to do in the first instance. Appellant does not differentiate between a limitation fixed by the legislature and one fixed by ordinance or charter. The case of *Rucker Borthers v. Everett*, 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582, is confidently relied on. That case is illustrative of the distinction we have sought to draw. There the law making power was the people acting under a free rein, and the court held that, inasmuch as the limit might have been omitted entirely, the assessment could not be collaterally attacked. Here the limit is not fixed by charter or ordinance under an open commission to assess at will, but by an independent act of the legislature prohibitive in character and having the force of a constitutional limitation. As in the moral law, there are certain thou shalt nots to be found

in the civil law which may not be disregarded without meeting a consequent penalty. The assumption of counsel that the city can now do what it had no power to do either regularly or irregularly, under the first assessment, is but begging the principle upon which it relies; for if there was a valid assessment, there could be no reassessment, and if a reassessment is necessary, it is because there was no assessment which the law recognized in the first instance.

Appellant also relies on that part of §§ 21 and 23 of the act (3 Rem. & Bal. Code, §§ 7892-21, 7892-23), which provide:

"Sec. 21. All objections shall state clearly the grounds of objections; and objections not made within the time and in the manner herein prescribed shall be conclusively presumed to have been waived."

"Sec. 23. Whenever any assessment roll for local improvements shall have been confirmed by the council or other legislative body of such city or town as herein provided, the regularity, validity and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the council upon such assessment roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment roll in the manner and within the time in this act provided no proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor, . . ."

Manifestly, these sections apply to independent and collateral proceedings and not to objections made in the proceeding itself. Any other construction would cut off the absolute rights of the property owner, even to the right of appeal. We held, when construing ch. 150, Laws of 1905, p. 281 (Rem. & Bal. Code, § 7905 *et seq.*), and ch. 118, Laws

of 1901, p. 243, § 2 (Id., § 7552), that the purpose of a similar statute was intended to save assessments when attacked collaterally, leaving to the aggrieved property owner the right to raise any proper objection upon direct attack *Real Estate Inv. Co. v. Spokane,* 59 Wash. 416, 109 Pac. 1057.

The city also complains that the superior court could not fix the amount that might be lawfully assessed against respondents' property. The factors in the equation are fixed, and appellant is not prejudiced by the order of the court; for, in reassessing, it could not, under the law, go beyond the figures fixed by the court in any event.

We are asked to say that the council may assess a sufficient sum in excess of the amount allowed by the court to cover accumulated interest. We find nothing in the law that would deny the council the right and power to add to the sum lawfully assessable to each particular tract an amount equal to the accumulated interest upon such sum from the time when the proper amount might have been assessed. It is the intent of the law that all assessments shall draw interest, whether the assessment be made upon the theory of benefits, or upon the theory of benefits limited to a percentage of the value of the property. In §§ 42 and 43 of the Laws of 1911 (3 Rem. & Bal. Code, §§ 7892-42, 7892-43), the legislature has made it clear that a reassessment shall include accrued interest. To allow this charge does not violate the provisions of § 12 of the act (Id., § 7892-12), for that goes to the principal charge and it can be in no way affected by the interest, be it greater or less in amount.

We are asked to decide that the council may enlarge the assessment district as heretofore defined, in order to bring in enough territory to pay the cost of the improvement. This we have no power or authority to do. If others are brought in, they are entitled to their day in court.

Affirmed.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.