[No. 12701. Department Two. January 11, 1916.]

TRIANGLE TRADERS et al., Appellants, v. THE CITY OF BREMERTON, Respondent.[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—REASSESSMENTS—AUTHORITY—STATUTES. Where confirmation of a sewer assessment was denied on appeal and the assessment set aside for failure to comply with 3 Rem. & Bal. Code, §§ 7892-10, 7892-15, 7892-16, in various particulars, the court may order the city council to levy a reassessment, notwithstanding some of the errors made were jurisdictional, under 3 Id., § 7892-42, providing that the city council shall make a reassessment whenever the original has for any cause been set aside, annulled or declared void by any court, either directly or by virtue of any decision of such court.

SAME—PUBLIC IMPROVEMENTS—COST OF WORK—EXTRAS—SETTLEMENT. The invalidity of a sewer assessment cannot be urged on the ground of excessiveness, arising through a settlement with the contractor allowing more than the contract price on the unit basis agreed upon, where the excess came through necessary changes entitling the contractor to extra compensation under the contract.

SAME—SETTLEMENT—CONCLUSIVENESS. A settlement allowing a contractor for sewer construction extra compensation on account of changes in the work, pursuant to the terms of the contract, is conclusive upon property owners assessed for the costs, in the absence of allegation or proof of fraud or collusion.

[1]Reported in 154 Pac. 193.

SAME—PUBLIC IMPROVEMENTS—ASSESSMENT DISTRICTS — ENLARGE-MENT—STATUTES. If a sewer assessment district does not include all the property susceptible of sewerage or drainage through the contemplated sewer, as required by 3 Rem. & Bal. Code, § 7897-15, the city could, by proper proceedings, enlarge the district by including the omitted property; and especially so, after a reassessment had been ordered under 3 Id., §§ 7892-42, 7892-43, requiring the reassessment to be made upon all property specially benefited, whether or not included in the original assessment district; provided the assessment does not exceed the actual cost and expense of the improvement.

SAME—PUBLIC IMPROVEMENTS—ASSESSMENTS—ORDINANCES. Under 3 Rem. & Bal. Code, § 7892-43 providing that a city shall proceed to make a reassessment by "passing an ordinance ordering the same," a reassessment authorized by resolution only is invalid.

SAME—ASSESSMENTS—DISTRICTS—APPORTIONMENT—VALIDITY. An assessment for a trunk sewer must have the boundaries of the district prescribed by ordinance, and the levy upon property between the termini of the improvement back to the middle of the block must be limited to the reasonable cost of a local sewer and its appurtenances, the remainder of the cost to be distributed over all the property in the district in accordance with special benefits in proportion to area, as expressly required by 3 Rem. & Bal. Code, §§ 7892-15 and 7892-16.

Appeal from an order of the superior court for Kitsap county, Smith, J., entered November 30, 1914, confirming an assessment roll for a public improvement, after a hearing before the court. Reversed.

*Frank P. Lewis* and *Louis Henry Legg*, for appellants.

*Thomas Stevenson*, for respondent.

FULLERTON, J.—On May 20, 1912, the city council of the city of Bremerton, by an order duly recorded in the minutes of its proceedings, directed the city engineer and the city attorney to take the necessary preliminary action relative to the construction of a trunk sewer on certain streets in such city, known as Warren and Ninth streets and Park avenue. Pursuant to such order, the city engineer prepared plans for such trunk sewer, and submitted the same to the council with an estimated cost thereof. The plans were adopted by

the city council on motion to that effect, and were "signed by the mayor and clerk." On July 29, 1912, the city council passed a resolution declaring its intention to order the improvement to be made. The resolution, while it contained much extraneous matter not required by the statute, contained all of the required essentials; it set forth the general nature of the improvement, described the routes along which the sewer was to be constructed, notified all persons who desired to object thereto to appear at a meeting of the city council at a time specified therein and present their objections, and directed the city engineer to report to the council, at or before the time fixed for the hearing, the estimated cost and expense of the improvement. The resolution was, however, published in but one issue of the official newspaper of the city, whereas the statute distinctly prescribed that it should be published in two of such issues. Laws of 1911, pp. 444, 449, §§ 10, 16 (3 Rem. & Bal. Code, §§ 7892-10, 7892-16).

On September 9, 1912, the city council, by ordinance, ordered the sewer to be constructed. The ordinance described with sufficient certainty the routes along which the sewer was to be constructed, contained an estimate of the cost thereof, and provided that the cost should be borne entirely by the property benefited, and that no part thereof should be charged to the general fund of the city. The city council, however, did not therein "establish and fix the boundaries of the district to be assessed for such improvement," although the statute specifically provides that they shall do so. Laws of 1911, p. 449, § 16 (Id., § 7892-16). Nor did they in this ordinance, or in any subsequent ordinance, adopt "maps, plans and specifications" for the improvement, notwithstanding this also is a specific requirement of the statute. Laws of 1911, p. 449, § 16 (Id., § 7892-16). In providing for the distribution of the assessment over the property benefited, the city council, in the ordinance, provided that a specific sum should be assessed against the property lying between

the termini of the sewer and back to the middle of the blocks lying on each side thereof, and that the balance of the cost and expense should be assessed against the remainder of the property in the district; notwithstanding the statute specifically provides that,

"In distributing such assessments, there shall be levied against the property lying between the termini of the improvement and back to the middle of the blocks along the marginal lines of the street or areas improved, such amounts as would represent the reasonable cost of a local sewer and its appurtenances . . . and the remainder of the cost and expense of such improvement shall be distributed over and assessed against all of the property within the bounds of said entire district in accordance with the special benefits conferred thereon and in proportion to area." Laws of 1911, p. 449, § 15 (Id., § 7892-15).

After the passage of the ordinance, the city council directed the clerk to advertise for proposals for the construction of the sewer. Several bids were submitted in response to the advertisement, and that of one L. Y. Stayton was accepted as the lowest and best bid. His bid was submitted on the unit basis; that is, at certain prices per lineal foot for the sewer pipe in place, based upon dimensions, certain fixed prices for catch basins and manholes complete, and certain fixed prices for the necessary connecting wyes. On October 15, 1912, a contract for the work was entered into between the city and Stayton, by the terms of which Stayton agreed to perform the work according to the plans and specifications reported by the city engineer at the prices stated in his bid; the estimated cost of the sewer completed at the prices named being $21,988.10.

The contractor immediately began the work of construction, and proceeded therewith until some time in April, 1913, when he ceased work thereon for some reason not clearly explained in the record. On May 5, 1913, the city engineer, at the direction of the city council, notified the contractor to resume the work within five days thereafter. The contractor

failed so to do, and the council, on May 12, 1913, by resolution, declared his contract forfeited, notice of which was given to the contractor, to his bondsmen, and to a banking corporation to whom the contractor had assigned the sums to become due him under the contract. This led to a meeting of the parties interested, and to an agreement between them by which the city, in consideration of certain changes made in the original contract with reference to the mode of payment to the contractor and certain waivers of claims made by the other parties, agreed to rescind the resolution annulling the contract and to permit the contractor to complete the contract according to its terms as modified by the agreement. The resolution referred to was thereupon rescinded and the contractor permitted to prosecute the work to its completion. The agreement thus entered into permitted the city to pay directly to the laborers and materialmen for the labor and material used in the construction of the sewer, and the subsequent liabilities for labor and material incurred by the contractor were so paid.

On January 5, 1914, the engineer submitted a final estimate of the cost of the work. This showed estimates according to the terms of the contract up to May 5, 1913, and from thence on the actual cost of the work as paid by the city, plus ten per cent on the amount thereof to the contractor; the aggregate totaling $40,927.63.

On May 9, 1914, the city council passed a resolution giving notice of its intention to amend the original ordinance authorizing the construction of the sewer, and on April 13, 1914, passed an ordinance to that effect. The material change was the enlargement of the district by the inclusion therein of property not described in the original resolution of intention to order the work. The amended ordinance, like the original ordinance, provided for the assessment of named sums upon the half blocks abutting upon the sewer between the termini thereof, and for the assessment of the balance of the cost to the remainder of the property in the assessment

district. Nowhere in the ordinance is it recited that the fixed
sums directed to be levied on such abutting property "would
represent the reasonable cost of a local sewer and its appur-
tenances," nor is it recited that such sum would equal that
sum plus the proportional share of the property for the bal-
ance of the cost. An assessment was levied pursuant to the
ordinance, to which objections were filed by certain of the in-
terested property holders. The objections were disallowed
by the council. Appeal therefrom was taken by certain of
the objectors to the superior court, which, after a hearing,
entered a judgment setting the assessment aside and remand-
ing the cause to the city council with instructions to reassess
the property "in the manner and mode provided by law."

On the remand of the cause to the city council, that body,
by resolution, ordered a reassessment of the property. The
resolution did not specify with any minuteness how the reas-
sessment was to be made, and the officer selected for that
duty seems to have spread the assessment over the property
much the same as before. He levied a fixed proportion of
the costs on the property between the termini of the sewer
and bordering thereon, and distributed the remainder over the
property included within the so-called enlarged district. Ex-
ception was again taken to the assessment roll by interested
property holders, which the city council overruled. Appeal
therefrom was taken to the superior court, where the objec-
tions were again overruled and the roll confirmed. This ap-
peal is from the order of confirmation of the superior court.

In this court the appellants have assigned numerous errors,
all of which are pressed upon us with earnestness and ability.
We shall not, however, notice them in detail, nor in the order
in which they are presented, as they suggest certain general
questions, which can best be noticed in their general form.

The first assignment to be noticed raises the contention
that the city council was without jurisdiction to order a re-
assessment of the property, because of the numerous depart-
ures from the statute made by the city council in the original

proceedings under which the trunk sewer was constructed. Most of these departures we have heretofore pointed out, and without enumerating further, it may be conceded that they justified holding invalid the original assessment. We are constrained to hold, however, that they were not sufficient in effect to prevent the court from directing a new or reassessment of the property. In the early case of *Frederick v. Seattle*, 13 Wash. 428, 43 Pac. 364, construing the statute of 1893, which provided for a reassessment to pay the cost of a public improvement where the original assessment had been held void, it was held that the "legislature intended to provide for a reassessment in all cases where the assessment had been held to be void, whether for irregularities or for want of prerequisites which went to the jurisdiction of the council to levy the assessment and to order the work done," and that such legislation was constitutional. The principle on which the case rests has been reannounced by us in many subsequent cases, and is now established law in this state. *Cline v. Seattle*, 13 Wash. 444, 43 Pac. 367; *Stephens v. Spokane*, 14 Wash. 298, 44 Pac. 541, 45 Pac. 31; *Ryan v. Sumner*, 17 Wash. 228, 49 Pac. 487; *Franklin Sav. Bank v. Moran*, 19 Wash. 200, 52 Pac. 858; *Bellingham Bay Imp. Co. v. New Whatcom*, 20 Wash. 231, 55 Pac. 630; *Lewis v. Seattle*, 28 Wash. 639, 69 Pac. 393; *Waldron v. Snohomish*, 41 Wash. 566, 83 Pac. 1106; *Kuehl v. Edmonds*, 85 Wash. 307, 148 Pac. 19; *Johnson v. Seattle*, 53 Wash. 564, 102 Pac. 448; *Hapgood v. Seattle*, 69 Wash. 497, 125 Pac. 965; *Allen v. Bellingham*, 77 Wash. 469, 137 Pac. 1016.

The existing statute relating to assessments for local improvements is fully as broad in its provisions as the statute of 1893; it especially provides for a new or a reassessment whenever the original assessment is for any reason declared void; the part thereof particularly applicable to the present proceeding reading as follows:

"Whenever any assessment for any local improvement in any city or town, whether the same be an original assessment,

assessment upon omitted property, supplemental assessment or reassessment, heretofore or hereafter made, has been or may hereafter be declared void and its enforcement [refused] by any court, or for any cause whatever has been heretofore or hereafter may be set aside, annulled or declared void by any court, either directly or by virtue of any decision of such court, the council of such city or town shall make a new assessment or reassessment upon the property which has been or will be benefited by such local improvement, based upon the actual cost of such improvement at the time of its completion." Laws of 1911, p. 469, § 42 (3 Rem. & Bal. Code, § 7892-42).

It was, therefore, within the province of the trial court, on setting aside the original assessment, to order a reassessment, and within the province of the city council to make such an assessment, notwithstanding some of the errors in the original proceedings may properly be termed jurisdictional.

The next contention is that the contractor was allowed for the finished work a greater sum than that to which he was justly entitled under the contract, and that the sum attempted to be assessed against the property of the district is, because thereof, too large. The evidence chiefly relied upon to support this contention is the report of the city engineer. This, as we have said, allowed the contractor the sum earned under the contract up to a certain point in the work, according to the prices fixed per unit for the pipe in place, and from thence on the actual cost of the work with ten per centum added. But as we read the record, the city did not settle with the contractor on the basis of the engineer's report. During the course of the work, a condition was encountered, not foreseen or contemplated when the contract was entered into, which necessitated changes in the original plans and which materially increased the cost of the work. In the final settlement, this condition was taken into consideration, and the contractor paid upon the basis of the contract price with an allowance for the extra services; the result being a less allowance than the engineer returned,

but an increase over the contract price if calculated alone upon the basis of the bid for units in place. Clearly there was no error in this. The contractor was entitled to this extra compensation, not only on the principle of natural justice, but by the express terms of the contract itself, which made provision therefor. Whether the amount allowed is excessive or otherwise is not open to inquiry in this proceeding. No fraud or collusion between the city and the contractor in making the settlement is either alleged or proven, and the rule in such cases is that the determination of the amount earned under the contract by the city authorities is conclusive upon the property holders. *Elma v. Carney*, 9 Wash. 466, 37 Pac. 707; *North Yakima v. Scudder*, 41 Wash. 15, 82 Pac. 1022.

For a like reason, there was no error in the ruling of the court in refusing to permit the witness Coe to testify to the cost of the sewer based upon the contract price. Since it was within the power of the city authorities to determine the question of the amount of the cost, the finding of the city authorities upon that question was, as we have said, conclusive.

The property of certain of the objectors was not included in the assessment district as described in the original resolution of the city council wherein it declared its intention to order the construction of the sewer, but was brought in under the amendatory ordinance providing for an enlarged district. It is the contention of the appellants owning such property that it was improperly included therein, as the statute relating to the creation of assessment districts to pay the cost of constructing trunk sewers does not contemplate the creation of enlarged districts. Since the statute relating to the construction of a trunk sewer (Laws of 1911, p. 449, § 15; 3 Rem. & Bal. Code, § 7892-15) provides that any district created to bear the assessment for such purposes "shall be outlined in conformity to topographical conditions, and . . . shall include as near as may be all the territory which

can be sewered or drained through such trunk sewer and the subsewers connected thereto," it would seem that any district created in conformity with the statute could not be enlarged, as such enlargement must of necessity embrace property not capable of sewerage or drainage through the sewer. But we think that, if the assessment district originally created did not include all of the property susceptible of sewerage or drainage through the contemplated sewer, the city could by proper proceedings, so enlarge the district as to include the omitted property, and it would make but little difference what terms it employed to denominate the new district. But this question is of no moment in the present controversy. This was a reassessment, made after the court had declared the original assessment invalid and had ordered such reassessment to be made. In such cases the city is specially authorized by statute (Laws of 1911, p. 469, § 42; Id., § 7892-42), "to assess or reassess all property which the council shall find to be specially benefited, . . . whether or not such property so to be assessed or reassessed . . . was included in the original assessment district." It is also provided (§ 43):

"The fact that the contract has been let or that such improvement shall have been made and computed in whole or in part shall not prevent such assessment from being made, nor shall the omission, failure or neglect of any officer or officers to comply with the provisions of law, the charter or ordinances governing such city or town, as to petition, notice, resolution to improve, estimate, survey, diagram, manner of letting contract or execution of work, or any other matter whatsoever connected with the improvement and the first assessment thereof, operate to invalidate or in any way affect the making of any assessment authorized in the preceding section: Provided, That such assessment shall be for an amount which shall not exceed the actual cost and expense of the improvement, together with the accrued interest thereon, it being the true intent and meaning of this act to make the cost and expense of local improvements payable by the property specially benefited thereby, notwithstanding the pro-

ceedings of the council, board of public works or other board, officer or authority of such city or town may be found irregular or defective, whether jurisdictional or otherwise; when such assessment is completed, all sums paid on the former attempted assessment shall be credited to the property on account of which the same were paid." *3* Rem. & Bal. Code, § 7892-43.

If, therefore, the property of these objectors is so situated that it can, by the construction of lateral sewers, be sewered or drained through the trunk sewer as constructed, it is subject to assessment to pay the cost regardless of the question whether the attempt of the city council to include it in the original assessment district was effective or otherwise.

Finally, the appellant contends that the reassessment was made upon a fundamentally wrong basis, and this objection we are constrained to hold is well taken. As we have said, after the original assessment had been declared invalid by the judgment of the superior court, the city council directed a new or reassessment to be made by passing a resolution to that effect. The statute provides (Laws of 1911, p. 469, § 43; Id., § 7892-43) that the city shall proceed with any such assessment "by passing an ordinance ordering the same." Elsewhere in the statute the wording makes it clear that the legislature did not use the terms "resolution" and "ordinance" interchangeably. Nowhere is it said that a particular action may be taken by "resolution or ordinance," but in every instance specific directions are given as to the manner in which action shall be taken; that is, the direction is that the particular action shall be taken by resolution, or that it shall be taken by ordinance, not that it may be taken either by resolution or ordinance.

There may not be in every instance any clearly discernible reason why the one method should be employed rather than the other, but it is sufficient that the statute so directs, and it is in virtue of the statute that the city is empowered to act in the premises at all. Seemingly, also, the statute con-

templates that the ordinance establish the boundaries of the district to be reassessed, and direct the manner in which the assessment is to be distributed over such district. In this latter respect the direction of the statute should be followed. It should be directed that there be levied against the property lying between the termini of the improvement and back to the middle of the blocks along the marginal lines of the street or areas improved, such amounts as would represent the reasonable cost of a local sewer and its appurtenances, and the remainder of the cost and expense distributed over and assessed against all of the property within the bounds of the entire district in accordance with special benefits and in proportion to area. This requirement of the statute is neither unreasonable nor unjust, and the city should not undertake to amend it. The abutting property required to bear the extra expense has the immediate benefit of the sewer, and is not thereafter liable to assessments for lateral or local sewers. The remaining property is not so situated. As to it the sewer is not of immediate use, and cannot be made so without the additional expense of the construction of lateral or local sewers, which the property must subsequently bear. In the end the burden equalizes.

Since, therefore, the new or reassessment was not ordered by ordinance as the statute requires, and since the assessment was not spread over the assessment district in the manner directed by the statute, we are constrained to hold the assessment invalid. The order of the trial court confirming the assessment is reversed, and the cause remanded with instructions to sustain the objections, without prejudice on the part of the city to levy a new assessment.

MORRIS, C. J., ELLIS, and CHADWICK, JJ., concur.