[No. 21450. Department One. April 19, 1929.]

A. E. Towers *et al., Appellants,* v. The City of Tacoma, *Respondent.*[1]

[1]Reported in 276 Pac. 888.

*Burkey & Burkey* (*J. Chas. Dennis,* of counsel) for appellants.

*E. K. Murray, Leo Teats,* and *Bartlett Rummel,* for respondent.

MITCHELL, C. J.—This is an appeal on behalf of twelve property owners from a judgment confirming an assessment roll for a trunk sewer local improvement district, being L. I. D. 1144, in the city of Tacoma, the district being some six or seven miles out from the business center of the city. The sewer, constructed as a sanitary and storm sewer, runs to the north and empties into Puget Sound near the smelter. From its outlet it extends southerly along the south boundary of Point Defiance Park to Pearl street, thence south one mile along Pearl street to North 42nd street, such point being the southern terminus of the sewer. For the north half mile of Pearl street, the district comprises about half a mile to the west but no territory to the east, because Pearl street for that distance is the western boundary of the town of Ruston, a separate municipal corporation. On either side of the south half mile of Pearl street, the district is about half a mile wide, and the district continues about the same width for approximately a mile south of North 42nd street and beyond that for about three-eighths of a mile the district narrows to about half a mile.

For an appreciable distance on each side of the sewer the land is platted into streets and blocks and more or less improved and settled upon, mostly by employees of the smelter. The property of all the appellants is acreage, except a small quantity belonging to A. E. Towers, and may for the purposes of this case be mentioned in three groups or divisions.

The first one consists of tracts belonging separately to Fred Shoemaker, the Allen Middleton estate, J. C. T. Middleton, Mabel Middleton, W. E. Hacker and A. E. Towers, all being situated in the southern and southwestern part of the district. Division Two consists of the lands of William H. Langworthy, Bertson Land Company, Kate L. and William T. Perkins, Jesse Thomas and Anna Fuller, all of which lie on the western border of the improvement district and are separated from Pearl street by four blocks of platted property. Division Three consists of what is spoken of as the Brookman tract. It contains one hundred and sixty acres in square form, the center of the north line of the tract being at or near the southern end of the sewer.

None of the appellants' property has ever been improved, with the exception of a small residence and chicken ranch on the Tower property. All of it is, and for a great number of years has been, raw, unplatted stump land upon which the vegetation has been noticeably affected by the smoke and fumes from the smelter. The weight of the testimony is to the effect that there is no market for such property and has not been for years, although many of the owners have tried to sell at prices generally less than the cost price of the property years ago; and, as we understand the testimony, even with the sewer in none of the witnesses could even estimate with any degree of certainty that any of appellants' property would be helped as to its marketability within any reasonable number of years.

All of the property in the district, whether platted or not, improved or not, whether situated on either side of the sewer or within the district entirely beyond the southern terminus of the sewer, was assessed in the same way—by area alone—so much a square foot, aggregating the sum of eighty-six thousand dol-

lars, which was the total cost of the improvement. The assessment fails to credit appellants' acreage with any area whatever reasonably necessary for streets and alleys, so as to put it upon an equitable basis with a large amount of platted property belonging to others in the improvement district. Such was the assessment that appellants are complaining of so far as it relates to their property, upon the ground that such assessments were arbitrary and were spread upon a fundamentally wrong basis.

It is our opinion that the contentions of the appellants must be sustained. It is entirely plain that the statute fixing the manner in which such assessments shall be made was overlooked or unheeded. The statute, Rem. Comp. Stat., § 9367, reads as follows:

"Any city or town shall have power to provide for the construction of trunk sewers, and trunk water-mains, and for the payment of all or any part of the cost and expense thereof by the levying and collecting of assessments upon property specially benefited thereby. In any such case the district created to bear such assessment shall be outlined in conformity with topographical conditions, and in case of trunk sewers, shall include as near as may be all the territory which can be sewered or drained through such trunk sewer and the subsewers connected thereto, and in case of trunk water-mains, shall include as near as may be all the territory in the zone or district to which water may be distributed from trunk water-mains through lateral service and distribution mains and services. In distributing such assessments, *there shall be levied against the property lying between the termini of the improvement and back to the middle of the blocks along the marginal lines of the street or areas improved, such amounts as would represent the reasonable cost of a local sewer and its appurtenances, or* water-main and its appurtenances suited to the requirements of such territory in the mode prescribed in section 9365, *and the remainder of the cost and expense*

*of such improvement shall be distributed over and assessed against all of the property within the boundary of said entire district in accordance with the special benefits conferred thereon and in proportion to area.''*

We have above italicized certain portions of the statute, none of which portions were observed in spreading the assessment in the present case. Here, there was no attempt whatever to *first* assess against the property to the center of the blocks on each side of the trunk sewer between its termini, such amounts as would equal the reasonable cost of a local sewer, and *then* distribute the remainder of the total cost over all the property in the district in accordance with the special benefits conferred thereon and in proportion to area. Here, as already stated, all the property in the whole district was assessed uniformly at so much per square foot to pay the total cost of the improvement.

In *Triangle Traders v. Bremerton,* 89 Wash. 214, 154 Pac. 193, and *In re Grandview,* 118 Wash. 464, 203 Pac. 988, attention was called to these specific portions of the statute, and to the necessity for complying with them.

The evidence in the case has been examined, and we find there is none whatever upon which a distribution of the cost of the improvement can be made in the manner required by the statute and we are therefore compelled upon reversing the judgment to remand the case to the superior court for further proceedings.

There are some other questions involved to be disposed of, since the case is to go back to the trial court for a new trial.

The property rights of the parties will be considered and disposed of in the new trial as of the date of the original assessment.

■ The statute says that property situated as appellants' property is shall be assessed "in accordance with the special benefits conferred thereon *and* in proportion to area." If an improvement costing one thousand dollars benefits land on each side, all the cost must not be assessed against the land on one side, although the land on that side may be benefited one thousand dollars. The land on the other side must help pay the cost. Again, if an improvement such as a trunk sewer costing one thousand dollars benefits all the land in the district but not uniformly as to area, then the cost must be distributed not uniformly as to area but according to the benefits each portion of the area receives, although the area thus assessed may have received actual benefits in excess of the assessment thus made against it. The cost of the improvement must be distributed as the statute says, "in accordance with the special benefits conferred thereon *and* in proportion to area."

■ Special assessments for local improvements are justified only upon the theory of corresponding special benefits to the property assessed. Now the statute, as we have seen, says the district created to bear the assessment shall be outlined in conformity with topographical conditions. That has to do with the creation of the district and neither means nor says, of course, that all the land in the district must be assessed to pay the cost of the improvement. Some of it may receive no benefit, and land can be assessed only if it is benefited. The case of *Monk v. Ballard*, 42 Wash. 35, 84 Pac. 397, involved assessments levied to pay for the building of a sewer, and while the statute in force at that time was somewhat different from our present statute in many particulars, nevertheless a fundamental and common sense view of the question

of special benefits is the same under both statutes, and in that case it was pertinently remarked:

"In order for a sewer to be susceptible of use to a given parcel of land, there must be access from said land to said sewer without passing through the property of other individuals."

In *Triangle Traders v. Bremerton, supra,* in discussing the question of the necessity of including an assessment in the original assessment, it was said:

"If, therefore, the property of these objectors is so situated that it can, by the construction of lateral sewers, be sewered or drained through the trunk sewer as constructed, it is subject to pay the cost . . ."

The rule there spoken of as applied to the present case means that none of the property in group one, hereinbefore described, can possibly use the trunk sewer or get any benefit whatever from the establishment of it. That property can in no way be connected with the trunk sewer by lateral sewers over and along any public way, for which reason it must be held that the trunk sewer is of no benefit to their lands and therefore that they shall not be assessed at all for the cost of the improvement.

The appellants, trustees of the Brookman property, complain that, in levying the cost of the lateral sewer west along North 42nd street, their property was assessed to a depth of one hundred and sixty feet, while the property on the other side was assessed to a depth of only one hundred and twenty feet. The assessing officer of the city admitted this and that the extra cost against the Brookman property amounted to fifty-six dollars, as we understand the record. This discrimination will be corrected in the new trial.

The city of Tacoma contends that, in several instances, these property owners did not sufficiently describe their property in their written protests be-

fore the city, and also that, as to several, the attorneys were not authorized to appear for the owners. All of these objections were presented to the city and to the superior court and were overruled. We have examined the record with reference to them and are satisfied to state generally that such objections were without substantial merit in our opinion and that the trial court correctly overruled them.

The judgment appealed from is reversed, and the cause is remanded to the superior court with directions to set aside the assessments herein complained of, without the right of reassessment as to the property herein spoken of as group one and that, as to the property of other appellants, the trial court shall take such further proceedings as may be necessary, and, if necessary by the city authorities, as may be in harmony with the views herein expressed.

HOLCOMB, FULLERTON, TOLMAN, and BEALS, JJ., concur.